## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NVR, INC. d/b/a RYAN HOMES, | ) | *Electronically Filed* |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO. _____** |
| | ) | |
| MAJESTIC HILLS, L.L.C.; | ) | |
| JND PROPERTIES, LLC; | ) | |
| PENNSYLVANIA | ) | |
|   SOIL AND ROCK INCORPORATED; | ) | |
| MARK R. BRASHEAR; | ) | |
| ALTON INDUSTRIES, INC.; | ) | |
| JOSEPH N. DENARDO d/b/a | ) | |
|   J.N.D. PROPERTIES; and | ) | |
| SHARI DENARDO, | ) | |
| | ) | |
| *Defendants*. | ) | **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, NVR, INC. d/b/a RYAN HOMES, by and through its attorneys, Porter Wright Morris & Arthur LLP, file this Complaint, and in support, states as follows:

## PARTIES

1.     NVR, Inc. d/b/a Ryan Homes ("NVR") is a Virginia corporation with its principal place of business at 11700 Plaza America Drive, Suite 500, Reston, Virginia 20190.

2.     Majestic Hills, L.L.C. ("Majestic Hills") is a Pennsylvania limited liability company, with its principal place of business at 411 McMurray Road, Bethel Park, Pennsylvania 15102.  Upon information and belief, Majestic Hills is a special purpose entity created by Defendant Joseph N. DeNardo and/or JND Properties, LLC in connection with the development of the Majestic Hills residential community.

3.      JND Properties, LLC ("JND") is a Pennsylvania limited liability company, with its principal place of business at 3625 Washington Pike, Bridgeville, Pennsylvania 15017.

4.      Joseph N. DeNardo and Shari DeNardo (collectively, the "DeNardos") are adult individuals with residence at 115 Linksview Drive, Canonsburg, Pennsylvania 15317.   The DeNardos founded JND.   In addition, Joseph N. DeNardo is the owner of the fictitious name J.N.D. Properties.

5.      Pennsylvania Soil and Rock Incorporated ("PS&R") is a Pennsylvania corporation, with its principal place of business located at 570 Beatty Road, Monroeville, Pennsylvania 15146.  PS&R provides geotechnical engineering and construction monitoring and testing.  PS&R is a licensed professional.  NVR is asserting a professional liability claim against this defendant.

6.      Mark R. Brashear ("Brashear") is a licensed professional engineer with an office address of 570 Beatty Road, Monroeville, Pennsylvania 15146.  Brashear is an agent, servant, or employee of PS&R.  NVR is asserting a professional liability claim against this defendant.

7.      Alton Industries, Inc. ("Alton") is a Pennsylvania corporation, with its principal place of business at 11 Carlton Drive, Eighty Four, Pennsylvania 15330.

## JURISDICTION AND VENUE

8.      This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1), in that there is complete diversity of citizenship between NVR and the Defendants and the amount in controversy exceeds $75,000.00.

9.      Venue is proper under 28 U.S.C. § 1391 because one or more of the Defendants resides within the territory of the Pittsburgh Division of the Western District of Pennsylvania and

a substantial part of the events or omissions giving rise to these claims occurred in this judicial district.

## BACKGROUND

### The Lot Purchase Agreement

10.     NVR is one of America's leading homebuilders.  NVR's home construction company builds and sells homes under the Ryan Homes, NVHomes, and Heartland Homes brands in 31 metropolitan areas in fourteen states, including, Maryland, New York, North Carolina, Virginia, Ohio, Indiana, Illinois, South Carolina, Pennsylvania, Tennessee, Florida, Delaware, West Virginia and New Jersey, as well as Washington, D.C.

11.     NVR does not develop or prepare the land upon which it builds the homes which it offers for sale.  Rather, NVR relies on contracted, local land development companies to prepare the property for homebuilding according to all applicable contractual, statutory, and regulatory requirements.  Only after the land development is completed, and the developer has certified that the land has been properly prepared for home construction, does NVR then purchase lots from the developer and begin its home construction activities.

12.     On December 23, 2004, NVR and Majestic Hills entered into a Lot Purchase Agreement ("LPA") pursuant to which Majestic Hills agreed to develop and sell to NVR one hundred seventy-nine (179) developed single family lots (the "Lots") situated in North Strabane Township, Washington County, Pennsylvania (the "Property").  A true and correct copy of the LPA is attached hereto as **Exhibit A**.

13.     Although Majestic Hills was the developer of the Property, upon information and belief, the DeNardos, through their common ownership and control of Majestic Hills and JND,

3

operated Majestic Hills and JND as alter egos of each other.  To wit, JND, not Majestic Hills,

engaged subcontractors, including but not limited to engineers Morris Knowles & Associates,

Inc. and PS&R, to perform work in connection with the development of the Property.  In turn,

PS&R's Preliminary Review, Fill Evaluation, all of its daily field reports and its construction

monitoring reports regarding the Property were addressed to JND and listed JND as its client.

Also, upon information and belief, the DeNardos, Majestic Hills, and JND failed to adhere to

corporate formalities with respect to Majestic Hills, kept Majestic Hills undercapitalized, and

substantially intermingled the affairs and assets of Majestic Hills, JND, and the DeNardos.

14.    Section 4 of the LPA sets forth the development obligations of Majestic Hills.

Section 4(a) of the LPA states in full:

> Seller covenants and agrees to proceed with due diligence to
> develop and improve the Lots into fully improved building lots, all
> in accordance with the development plans approved by the North
> Strabane Township and/or Washington County, Pennsylvania, the
> Development Standards attached hereto as Exhibit "D-l", other
> required governmental and quasi-governmental agencies and this
> Agreement, including the installation of streets, curbs, storm and
> sanitary sewers, gutters, water lines, including fittings and
> hydrants, gas lines and all other public utilities, including
> underground electrical wiring, adjacent to the Lot lines, street signs
> and street lights. Seller further covenants and agrees that all
> improvements will be of good quality, installed in good and
> workmanlike manner and suitable for their intended purposes.
> Seller shall complete all of said work for the first section of Lots
> on or before August 31, 2005.

**Ex. A**, the LPA at p. 3, Para. 4(a).

15.    Majestic Hills further agreed "that each Lot, at the time of settlement

hereunder, shall be buildable," and that "[e]ach Lot shall be cleared in accordance with

the grading and utility plan to be approved by North Strabane Township and/or

4

Washington County in accordance with the Development Standards attached as

Exhibit D-1." **Ex. A** p. 3, Para. 4(b)(2).

16.     Section 4(c) of the LPA provides:

> (i) Grading.  Seller shall grade the Lot pursuant to the grading plan
> to be approved by the North Strabane Township and/or
> Washington County, which upon approval shall be attached hereto
> as Exhibit "D-2" (the "Grading Plan") in accordance with the
> Development Standards attached as Exhibit "D-1".  Seller shall
> provide engineering certificates for all fill Lots.  Seller shall
> guarantee that the main structure of each house, including
> attached/contiguous garages and detached garages, porches, patios
> and decks constructed by Purchaser, exclusive of outbuildings,
> shall be built on solid soil and not fill, provided the structure
> constructed by Purchaser has not less than eleven (11) course of
> block or a maximum basement depth of seven feet four inches
> (7'4").

17.     Exhibit D-1 to the LPA sets forth NVR's Development Standards for the

Pittsburgh Region.

18.     Those Development Standards provide, in relevant part:

> All grading and excavation shall be accomplished in a manner that
> complies and conforms to local soil erosion and sedimentation
> protection standards.  Developer shall be responsible for filling in
> all temporary sediment traps and erosion ditches upon completion
> of necessary vegetation.   Developer shall be responsible for
> maintaining all erosion and sediment protection measures except
> "on lot" controls as specified by Department of Environmental
> Protection (D.E.P.).

**Ex. A** at Ex. D-1, ¶ B(3).

19.     The Development Standards further provide:

> Building pad areas and any sediment traps located in building pad
> areas, shall be properly prepared and established to allow Ryan
> Homes to install a standard footing at a minimum frost depth.
> Spreading lifts shall not exceed eight (8) inches in depth and

> compacted at specified moisture content until the maximum density attainable using ASTM test No. D1557 is 95% of maximum. All fills must be compacted using vibratory or sheep's foot rollers only, and documented by a registered engineers correspondence.

**Ex. A** at Ex. D-1, ¶ B(7).

20.     Paragraph 9(d) of the LPA states:

> Seller agrees to indemnify and hold Purchaser harmless from any liability, loss, damage and expense including judgments, costs and attorneys' fees by reason of injuries to or death of any person or persons, expressly including therein employees of Purchaser, its subcontractors, employees and agents, or loss of or damage to their property or that of any person, firm, association or corporation, however the same shall occur or be caused or by reason of claim of any and every character whatsoever in any manner resulting from, arising out of, or connected with Seller's work, or undertaking, or acts or omissions of Seller or its employees and agents, whether such acts or omissions be claimed to be negligent or not, except that this indemnification provision shall not cover the negligence of the Purchaser or its subcontractors, employees and agents. Seller shall maintain in full force and effect liability insurance covering damage to property and persons resulting from or connected with such activity.

**Ex. A**, the LPA at p. 7, Para. 9(d).

## **Property Development of Lots 37, 38, and 39**

21.     Subsequent to the execution of the LPA and pursuant to its contractual obligations thereunder, Majestic Hills developed the Property, which included Lots 37, 38, and 39 in the Majestic Hills community.

22.     Lots 37, 38, and 39 were designated as being "low-side lots" and required specific grading standards as defined under Exhibit "D-1" of the LPA.

6

23.     As the developer, Majestic Hills was responsible for the earthwork on the Property.  This included, *inter alia*, embankment and keyway excavation; placement of required underdrains and drain outlets; and placement, grading, compaction of fill, and compliance with all government requirements related to the same.

24.     JND, acting by and through the DeNardos, having common ownership and control with Majestic Hills, engaged PS&R to provide geotechnical engineering as well as construction monitoring and field reporting services in connection with the development of the Property.

25.     PS&R was an agent, employee, and/or subcontractor of JND when it provided geotechnical engineering and construction monitoring and field reporting services during development of the Property.

26.     In 2005, PS&R reviewed published geotechnical-related maps and literature relative to the geology, past mining activities, and soils present at the Property.  It summarized its review and observations relative to the geotechnical conditions of the Property in a Preliminary Review submitted to JND on April 12, 2005.  NVR relied upon this Preliminary Review of the planned development.  Upon information and belief, North Strabane Township also relied upon this Preliminary Review in providing necessary approvals for the development of the Property.  A true and correct copy of the Preliminary Review is attached hereto as **Exhibit B**.

27.     During development of the Property, Majestic Hills and JND installed a sidehill embankment on Lots 37, 38, and 39.

28.     The sidehill embankment was planned to be approximately 18 to 20 feet thick near the top of the slope, and the toe (bottom) of the sidehill embankment was to be constructed along the southern edge of Forest Lane Drive, a road bordering the rear of Lots 37, 38, and 39.

29.     Alton was an agent, employee, or subcontractor of Majestic Hills and performed earthwork-related activities on the sidehill embankment adjacent to Lots 37, 38, and 39 of the Majestic Hills Site, including excavating a keyway, placing underdrains and drain outlets, placing and compacting fill, and grading.

30.     PS&R provided earthwork monitoring to JND related to Alton's work on the sidehill embankment.

31.     PS&R knew that NVR would rely on its earthwork monitoring for Lots 37, 38, and 39, and NVR in fact relied upon PS&R's earthwork monitoring in its construction of the detached single family dwellings on those lots.

32.     According to PS&R's reports concerning the sidehill embankment, Alton installed an initial 430-foot keyway underdrain of perforated 4-inch diameter drainage pipe atop "non-woven geotextile fabric" and encased the pipe in "2B limestone."  In addition, according to PS&R's reports concerning the sidehill embankment, Alton installed a second 500-foot long section of perforated 4-inch diameter drainage pipe encased in "2B limestone" for "further stability and groundwater infiltration."   Alton placed embankment fill in 10- to 12-inch thick loose lifts and compacted that fill.

33.     PS&R's earthwork monitoring reports stated that Alton had performed the earthwork-related construction activities in general compliance with accepted construction practices.  NVR relied upon PS&R's earthwork monitoring reports when it built homes on the

lots.  Upon information and belief, North Strabane Township also relied upon PS&R's earthwork monitoring reports in providing necessary approvals for the development work.

34.    In 2006, Majestic Hills conveyed to NVR the finished building pads for Lots 37, 38, and 39.

35.    Indeed, at the time of NVR's acquisition of Lots 37, 38, and 39, Majestic Hills and PS&R certified to NVR that Lots 37, 38, and 39 were buildable.

36.    Thereafter, NVR constructed detached single family dwellings on Lots 37, 38, and 39.  Each of these dwellings was built upon the sidehill embankment previously installed by Majestic Hills, JND, and Alton.

37.    Lots 37, 38 and 39, and the homes built thereon, were sold to NVR's third-party customers on February 14, 2008, October 27, 2006, and September 29, 2006, respectively. Lot 39 is now identified as 2019 Majestic Drive, Canonsburg, Pennsylvania; Lot 38 is now identified as 2021 Majestic Drive, Canonsburg, Pennsylvania; and Lot 37 is now identified as 1024 Oakwood Drive, Canonsburg, Pennsylvania.

38.    Upon information and belief, and unbeknownst to NVR, subsequent to the completion of the construction of the homes on Lots 37, 38, and 39 and their sale, two small landslides occurred at the sidehill embankment.

39.    Upon information and belief, approximately within the past three years, Majestic Hills and/or JND attempted to repair the sidehill embankment.  Such repairs included, but were not limited to, further excavation of the subject embankment and installation of additional drainage pipe and a drainage pipe outlet without a permit, without approved engineering design

plans, and without sediment controls.  Upon information and belief, these repairs were done without any prior knowledge or approval by North Strabane Township.

## The 2018 Landslide Affecting Lots 37, 38 and 39

40.     Sometime in mid to late June 2018, a catastrophic land movement occurred resulting in an active landslide adjacent to and directly affecting Lots 37, Lot 38, and Lot 39. Photos of the landslide are attached collectively as **Exhibit C**.

41.     This landslide created an imminently dangerous situation threatening lives and property.  The homeowners of Lots 37, 38 and 39 and their families were required to vacate their homes.  The homeowners vacated their homes and ceased residing there as of June 2018.

42.     NVR has provided the homeowners alternative lodging at NVR's expense since that time.

43.     On August 29, 2018, the homes constructed on Lots 37, 38, and 39 were condemned by North Strabane Township as they were deemed to be uninhabitable and dangerous as a direct result of the landslide.  The condemnation notices are attached collectively as **Exhibit D.**

44.     North Strabane Township has announced its plan to demolish the homes sometime prior to the end of October, 2018.

45.     On September 12, 2018, NVR delivered to Majestic Hills a written Notice of Default ("Notice of Default") with respect to Lots 37, 38, and 39 and Majestic Hill's contractual duties under the LPA.  A true and correct copy of the Notice of Default is attached hereto as **Exhibit E**.

46.     Since the delivery of the written Notice of Default, Majestic Hills has taken no action to remedy or cure the defaults identified by NVR within the time period required by the LPA.

47.     As a result of the Defendants' acts and omissions as set forth herein, as well as the Defendants' failure to attempt to remedy or cure the defaults, NVR has incurred considerable expense in order to prevent and mitigate the consequences of the potential catastrophe of the active landslide.  These expenses include, but are not limited to: (1) engineering consultant fees to assess the risk posed to the homeowners of Lots 37, 38, and 39; (2) costs associated with relocating the homeowners of Lots 37, 38, and 39 when the engineering consultant determined that the homes were unsafe; and (3) attorney's fees and costs incurred as a result of NVR's efforts to compel North Strabane Township to demolish the homes on Lots 37, 38, and 39 before the active landslide inevitably pulls the homes down.  The total costs and expenses incurred by NVR as a result of the Defendants' acts and omissions exceeds $75,000.00.

### Lot 102

48.     During the course of the development of the Property, Majestic Hills and JND developed Lot 102, which is a "low-side lot" requiring specific grading standards as defined under Exhibit "D-1" of the LPA.

49.     PS&R provided construction monitoring to JND with respect to the development of Lot 102.

50.     PS&R knew that NVR would rely on its earthwork monitoring for Lot 102, and NVR in fact relied upon PS&R's earthwork monitoring in its building of a detached single family dwellings on that lot.

51.     Majestic Hills conveyed to NVR the property located at Lot 102, certifying to NVR that the lot was buildable.

52.     Thereafter, NVR built a detached single family dwelling on Lot 102.

53.     Lot 102 and the home built thereon were sold to NVR's customer on March 16, 2011.  The property has an address of 4006 Bentwood Drive, Canonsburg, Pennsylvania.

54.     On September 21, 2018, NVR became aware of slope movement at the top of the hill toward the rear of the yard at Lot 102.  The homeowner of Lot 102 also advised that there was cracking in the land in his backyard.

55.     On September 24, 2018, NVR inspected the property.  NVR's consultant engineer advised that immediate action was required to remediate the site in order to prevent further damage.  That immediate action included taking steps to relieve the water which had accumulated at the toe of the slope and to ensure proper drainage.

56.     On or about September 25, 2018, the Pennsylvania Department of Environmental Protection ("DEP") issued a Compliance Order to Joseph DeNardo and Majestic Hills, requiring that they clean the landslide and stabilize the slope by September 28, 2018.

57.     As of the filing of this Complaint, despite the clear danger evidenced by the DEP Compliance Order, Joseph DeNardo and Majestic Hills have failed to comply fully with the DEP Compliance Order and have not stabilized the slope.

58.     Instead, upon information and belief, due to Majestic Hills and Joseph DeNardo's failure to timely mitigate a potential public catastrophe, North Strabane Township was forced to undertake the immediate repairs to the slope.

59.     As a result of the Defendants' acts and omissions as set forth herein, as well as the

Defendants' failure to attempt to remedy or cure the defaults, NVR has incurred considerable

expense in order to prevent or mitigate the consequences of the potential catastrophe of yet

another active landslide in the Majestic Hills community.   These expenses include, but are not

limited to, engineering consultant fees to assess the risk posed to the homeowner of Lot 102 as

well as the adjacent lots.

### The Master Vendor Agreements Between NVR and PS&R

60.     On or about January 26, 2006, NVR and PS&R entered into a Professional

Services Agreement (the "2006 Agreement").   A true and correct copy of the 2006 Agreement is

attached as **Exhibit F**.

61.     The 2006 Agreement provides that it "applies to and governs the furnishing of all

Services requested by NVR from [PS&R] at any time following the date of this Agreement

unless other terms and conditions are specifically agreed to in writing by NVR when particular

Services are requested from Provider."   **Ex. F** § 1.

62.     The 2006 Agreement further provides that "[i]t is contemplated under this

Agreement that [PS&R] shall perform Services for NVR in regards to multiple job sites and

possibly more than one state.   Other than the specific scope of Services and pricing for a

particular job, this Agreement shall govern the full working relationship between [PS&R] and

NVR."   **Ex. F** § 1.

63.     The 2006 Agreement also provides:

> INDEMNIFICATION:  Provider agrees to indemnify NVR and its
> affiliates, and the employees, officers, agents and invitees for, and
> to save them harmless against, any and all liabilities, losses and

costs caused by the negligence, sole or concurrent, of Provider, its subcontractors, agents and employees (together with reasonable attorney's fees), arising from or connected with (i) Provider's breach of or non-compliance with any of the representations or provisions of this Agreement; (ii) any alleged personal injury, death or property damage arising from or connected with the Services; or (iii) any alleged defect or malfunction in any of the services or materials provided in connection with the Services. Notwithstanding the foregoing, no provision of this Agreement shall obligate Provider to indemnify NVR and its affiliates for any liability attributable to the sole negligence of NVR or its affiliates.

**Ex. F** p. 6–7, § 6(C).

64.    On or about April 12, 2018, NVR & PS&R entered into a Master Vendor Agreement (the "2018 MVA").  A true and correct copy of the 2018 MVA is attached as **Exhibit G**.

65.    The 2018 MVA provides that it "applies to and governs (i) the performance of all Work requested by NVR from [PS&R] . . . and (iv) the performance of all Professional Services requested by NVR from [PS&R]."  **Ex. G** p. 1.

66.    The 2018 MVA further provides:

PS&R agrees to indemnify NVR, its affiliates, holding companies, subsidiaries, divisions, predecessors, successors, officers, directors, employees, agents, contractors, attorneys, representatives, insurers and assigns (collectively, the "NVR Indemnitees") for, and to hold the NVR Indemnitees harmless against, any and all claims, demands, liabilities, duties, actions and causes of actions, losses, damages, penalties and costs (together with reasonable attorneys' fees) (collectively, the "Claims"), arising from or connected with the failure of Vendor, any subcontractor of Vendor, or any of their respective employees, officers, agents or invitees (collectively, the "Vendor Parties") to comply with Applicable Laws in the performance of the Services.

**Ex. G** p. 5 § 5.

14

## Lot 530

67.     Two homes along Bentwood Drive in the Majestic Hills Community were constructed on lots where compacted fill was placed to fill in a temporary storm water outlet.

68.     The original site development plan for the area encompassing these two lots included a storm sewer pipe which was installed along a valley which had originally been designated to be open space.

69.     During the development of the Property, Majestic Hills—or its agents, employees, or subcontractors—rerouted the storm sewer pipe and developed the area into two additional building lots.  One of the two lots was designated as Lot 530.

70.     PS&R and Brashear provided earthwork monitoring for DeNardo and/or JND. Upon information and belief, Majestic Hills relied upon the earthwork monitoring reports in its development of the Property.

71.     PS&R and Brashear's earthwork monitoring reports stated that the contractor had generally performed the earthwork-related construction activities in general compliance with accepted construction practices.

72.     Based upon PS&R's Preliminary Review of April 12, 2005, as described above, NVR directly engaged PS&R to study and advise whether Lot 530 was suitably developed to support a detached single family dwelling.

73.     On July 23, 2014, pursuant to the 2006 Agreement, PS&R and Brashear submitted a Presumptive Bearing Evaluation to Dave Woltz of NVR.  A copy of this Presumptive Bearing Evaluation is attached as **Exhibit H**.

15

74.    In the Presumptive Bearing Evaluation, PS&R and Brashear noted that approximately 5-10 feet of fill was placed on the front of Lot 530 and that no fill was placed at the rear of Lot 530 to establish the building pad.

75.    PS&R and Brashear concluded in the Presumptive Bearing Evaluation that the "bearing surface will consist of stiff to very stiff, dry to damp residual clayey soil or clayey fill that was placed and compacted in a controlled manner."

76.    In the Presumptive Bearing Evaluation, PS&R and Brashear judged the fill materials observed on Lot 530 "to be consistent with soils suitable for supporting the proposed residential structure" using a "maximum allowable bearing capacity of 2,000 pounds per square foot."

77.    PS&R knew that NVR would rely on its earthwork monitoring for Lot 530 and NVR in fact relied upon PS&R's earthwork monitoring in its building of a detached single family dwellings on that lot.

78.    Lot 530 and the home built thereon was sold to NVR's purchasers on October 14, 2014.  The physical address of the home is 4050 Bentwood Drive, Canonsburg, Pennsylvania.

79.    In early 2018, the owners of Lot 530 notified NVR of settlement issues concerning their foundation.  PS&R visited the site on June 28, 2018, and observed standing water at the subgrade elevation.

80.    Pursuant to the 2018 MVA, PS&R performed a level survey in July 2018, and determined that the garage and front right corner of the house on Lot 530 had settled approximately 2 inches.  A significant crack was observed along the rear wall of the house that was caused by the settlement.

16

81.     On July 28, 2018, Test Boring Services, Inc. conducted standard penetration tests in conjunction with soil sampling.  Fill, consisting of a mixture of clay and silt with shale, coal, and sandstone fragments was found at each of the test locations.  The fill extended to depths of as much as 27 feet.

82.     Based upon the observed distress in the home, PS&R concluded that "the distress observed in the existing residential structure is due to the differential settlement of the fill due to building loading conditions and groundwater infiltration, saturation, and softening."  PS&R further concluded that "there is a potential for additional settlement to occur in the future."

83.     On September 12, 2018, NVR delivered to Majestic Hills a written Notice of Default ("Notice of Default") with respect to Lot 530 and Majestic Hill's contractual duties under the LPA.  A true and correct copy of the Notice of Default is attached hereto as **Exhibit I**.

84.     As a result, PS&R recommended installing a series of hydraulically pushed micro-piles, also known as Magnum Piers, to support the house.

85.     The total cost to install the Magnum Piers, as recommended by PS&R, exceeds $100,000.00.

<u>**COUNT I**</u>
**Breach of Contract**
***Majestic Hills***

86.     NVR incorporates by reference all preceding paragraphs of this Complaint as if fully stated herein.

87.     Under the LPA, Majestic Hills was required to complete certain Development Obligations as delineated in the LPA.  Specifically, Majestic Hills agreed:

17

a. to develop and improve the Lots into fully improved building lots in accordance with the development plans approved by the North Strabane Township and/or Washington County, Pennsylvania, the Development Standards contained in Exhibit "D-l" to the LPA, and other required governmental and quasi-governmental agencies;

b. that all improvements will be of good quality, installed in good and workmanlike manner and suitable for their intended purposes;

c. to grade the Lots pursuant to the grading plan approved by the North Strabane Township and/or Washington County, that is Exhibit "D-2" (the "Grading Plan") of the LPA; and

d. that the main structure of each house, including attached/contiguous garages and detached garages, porches, patios and decks constructed by Purchaser, exclusive of outbuildings, shall be built on solid soil and not fill, provided the structure constructed by Purchaser has not less than eleven (11) course of block or a maximum basement depth of seven feet four inches (7'4").

88.    Majestic Hills breached the LPA by failing to complete its Development Obligations.

89.    In particular, Majestic Hills breached the LPA by:

a. failing to comply with the Development Standards as set forth in the LPA with respect to Lots 37, 38, and 39, as well as the adjacent sidehill embankment as specified herein;

b. failing to comply with the Development Standards as set forth in the LPA with respect to Lot 102 as specified herein; and

c. failing to comply with the Development Standards as set forth in the LPA with respect to Lot 530 as specified herein.

90.    As a direct result of Majestic Hills's multiple breaches of the LPA, NVR has suffered reasonably foreseeable and certain money damages in an amount exceeding $75,000.00.

## COUNT II
### Breach of Contract
### *JND, DeNardos, PS&R, and Alton*

91.     NVR incorporates by reference all preceding paragraphs of this Complaint as if fully stated herein.

92.     Upon information and belief, JND, the DeNardos, PS&R and Alton performed services for Majestic Hills pursuant to contracts and/or acted as the agents of Majestic Hills with respect to its obligations to NVR, as set forth in the LPA.

93.     NVR does not have copies of said contracts, and thus has not attached them to this Complaint.

94.     Upon information and belief, NVR was an intended third-party beneficiary of these contracts.

95.     Upon information and belief, the acts and omissions of JND, the DeNardos, PS&R, and Alton, as outlined above, constituted breaches of the various contracts between these Defendants and Majestic Hills.

96.     As a direct result of Defendants' breaches of their various obligations, NVR has suffered reasonably foreseeable and certain money damages in an amount exceeding $75,000.00.

## COUNT III
### Breach of Contract
### *PS&R*

97.     NVR incorporates by reference all preceding paragraphs of this Complaint as if fully stated herein.

98.     PS&R, acting by and through Brashear, breached the 2006 Agreement in the following particulars:

a.  failing to properly test the fill materials used on Lot 530 during the course of preparing the Presumptive Bearing Evaluation for NVR;

b.  failing to properly monitor the development of Lot 530 and the compaction of the fill materials on Lot 530 during the course of preparing the Presumptive Bearing Evaluation for NVR;

c.  failing to advise NVR that inappropriate fill materials were used on Lot 530;

d.  failing to anticipate or disclose to NVR the likelihood of differential settlement as a result of the fill materials and compaction methods used on Lot 530;

e.  wrongly concluding that the fill materials utilized on Lot 530 were consistent with soils suitable for supporting the proposed residential structure; and

f.  providing NVR an inaccurate Presumptive Bearing Evaluation with respect to Lot 530.

99.    As a direct result of PS&R's breaches of the 2006 Agreement, the house built on Lot 530 has experienced differential settlement.

100.    As a further result, NVR has suffered reasonably foreseeable and certain money damages in an amount exceeding $75,000.00.

## COUNT IV
### Negligence
### *Majestic Hills, JND, DeNardos, PS&R, Brashear, and Alton*

101.    NVR incorporates by reference all preceding paragraphs of this Complaint as if fully stated herein.

102.    PS&R's faulty certifications of the earthwork-related activities on the sidehill embankment adjacent to Lots 37, 38, and 39, as well as its faulty certifications with respect to Lots 102 and 530, were negligent and have caused significant financial harm to NVR.

20

103.     Alton's faulty excavation and earthwork-related activities on the subject embankment were negligent and have caused significant financial harm to NVR.

104.     JND and/or the DeNardos' failure to further inquire into PS&R's certifications of the earthwork-related activities was negligent and has caused significant financial harm to NVR.

105.     JND and/or the DeNardos' faulty excavation of the subject embankment and faulty installation of an additional drainage pipe and a drainage pipe outlet without a permit, without approved engineering design plans, and without sediment controls were negligent and have caused significant financial harm to NVR.

106.     Majestic Hills' conduct—as set forth throughout this Complaint, including but not limited to Count I herein—was negligent and has caused significant financial harm to NVR.

107.     As a direct result of Defendants' negligence, NVR has suffered reasonably foreseeable and certain money damages in an amount exceeding $75,000.00.

**COUNT V**
**Professional Negligence**
*PS&R and Brashear*

108.     NVR incorporates by reference all preceding paragraphs of this Complaint as if fully stated herein.

109.     PS&R and Brashear, as outlined above, failed to exercise the ordinary skill and knowledge of a professional engineer.

110.     As a direct result of Defendants' negligence, NVR has suffered reasonably foreseeable and certain money damages in an amount exceeding $75,000.00.

## COUNT VI
### Indemnification
#### *Majestic Hills and PS&R*

111.    NVR incorporates by reference all preceding paragraphs of this Complaint as if fully stated herein.

112.    Pursuant to the indemnification provisions set forth in the LPA, the 2006 Agreement and 2018 MVA, Majestic Hills and PS&R agreed to indemnify and hold harmless NVR from Majestic Hills' and PS&R's negligence.

113.    As outlined above, Majestic Hills and PS&R's own negligence, as well as the negligence of their respective subcontractors, has caused substantial harm to NVR.

114.    For these reasons, Majestic Hills and PS&R are liable to NVR for all of the attorneys' fees, costs, and expenses incurred by NVR as a result of the Defendants' failure to properly perform their duties in connection with the development of the Property.

115.    As a direct result of Defendants' negligence, NVR has suffered reasonably foreseeable and certain money damages in an amount exceeding $75,000.00.

### REQUESTED RELIEF

**WHEREFORE**, Plaintiff NVR, Inc. respectfully demands judgment in its favor, and against Defendants jointly and severally, awarding:

a.   money damages in an amount exceeding $75,000.00;

b.   pre-judgment and post-judgment interest to the maximum extent allowed by law;

c.   NVR's costs and expenses, including reasonable attorney's fees, incurred through these proceedings to the maximum extent allowed by law; and

    d.  any such other and further relief as in law and justice Plaintiff may be entitled to receive.


Respectfully submitted,


Dated:  October 5, 2018           */s/ Kathleen A. Gallagher*
Kathleen A. Gallagher
Pa. I.D. No. 39750
Devin A. Winklosky
Pa. I.D. No. 86277
Russell D. Giancola
Pa. I.D. No.  200058
Carolyn B. McGee
Pa. I.D. No. 208815

**Porter Wright Morris & Arthur LLP**
6 PPG Place, Suite 830
Pittsburgh, PA 15222
(412) 235-4500
kgallagher@porterwright.com
dwinklosky@porterwright.com
rgiancola@porterwright.com
cmcgee@porterwright.com
*Counsel for NVR, Inc. d/b/a Ryan Homes*