IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NVR, INC. d/b/a RYAN HOMES, | ) |
| | ) |
| Plaintiff, | ) 2:18-cv-01335-NR |
| | ) |
| vs. | ) |
| | ) |
| MAJESTIC HILLS, L.L.C. et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

### J. Nicholas Ranjan, United States District Judge

Before the Court is Plaintiff NVR, Inc.'s ("NVR") motion for preliminary injunction [ECF 142] against Defendants Majestic Hills, LLC ("Majestic Hills"), JND Properties, LLC (the corporate parent of Majestic Hills), its manager, Joseph DeNardo, and his wife, Shari DeNardo (collectively, "Developer Defendants"). For the reasons that follow, the Court will deny the motion.

### I.    BACKGROUND

In 2004, homebuilder NVR contracted with Majestic Hills to purchase 179 residential building lots in what is now known as the Majestic Hills development in North Strabane Township, Washington County, Pennsylvania. [ECF 1, at ¶ 12]. In 2018, a devastating landslide occurred at the development, which caused four families to evacuate their homes and necessitated significant remediation work. [ECF 143, at 2]. Homeowners, municipal entities, and others have pursued legal action in state court against NVR, the Developer Defendants, and others. [*Id.*].

On October 5, 2018, NVR filed this action against the Developer Defendants, engineering firm Pennsylvania Soil & Rock, Inc., engineer Mark R. Brashear, and earthwork contractor Alton Industries, Inc., asserting, among other things, causes of action for negligence, breach of contract, and indemnification. [ECF 1, at ¶¶ 86-115]. NVR seeks money damages in excess of $1.6 million, but claims that the total damages caused by the Developer Defendants' alleged negligence currently exceeds $7 million. [ECF 143, at 2].

On July 17, 2019 NVR filed a motion for preliminary injunction to preserve Developer Defendants' assets. [ECF 142]. NVR argues that a freeze is appropriate for various reasons, including that: 1) Developer Defendants' insurance coverage is in doubt; 2) they are likely to be found liable in this action; 3) they have already fallen behind on payments to subcontractors; 4) they have a practice of shifting assets between non-party entities; and 5) they have publicly

admitted that they are or will be insolvent. [ECF 143, at 13].  In particular, NVR seeks an order either freezing Developer Defendants' assets (as well as the assets of related entities Ashwood Land Partners, LP and Ashwood Commons, LLC) or ordering the Developer Defendants to put $7 million into an escrow account pending the conclusion of this action. [ECF 142-1].

The parties submitted the motion on the briefs and did not request oral argument. The motion is ripe for disposition.

## II.     DISCUSSION

**A.     Preliminary Injunction Standard.**

Federal Rule of Civil Procedure 65(a) grants federal courts the authority to issue preliminary injunctions.  In diversity cases, like this one, federal courts apply state law to substantive issues and federal law to procedural issues.  *See Hanna v. Plumer*, 380 U.S. 460, 465 (1965) ("[F]ederal courts are to apply state substantive law and federal procedural law."). The Third Circuit has clearly stated that it "utilize[s] a federal standard in examining requests to federal courts for preliminary injunctions." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 799 (3d Cir. 1989); *see System Operations, Inc. v. Scientific Games Dev. Corp.*, 555 F.2d 1131, 1141 (3d Cir. 1977) ("Although the right upon which this cause of action is based is state-created, Rule 65(a) of the Federal Rules of Civil Procedure contemplates a federal standard as governing requests addressed to federal courts for preliminary injunctions."). Therefore, there can be no dispute that federal law applies to the preliminary injunction standard to be applied here.

The preliminary injunction standard is well known—"[t]here are four factors to consider in assessing a motion for a preliminary injunction: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably harmed by the denial of relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest." *Figueroa v. Precision Surgical, Inc.*, 423 F. App'x 205, 207-08 (3d Cir. 2011) (citing *Council of Alternative Political Parties v. Hooks*, 121 F.3d 876, 879 (3d Cir.1997)); *accord American Express Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 366 (3d Cir. 2012).  However, before the Court can examine these four factors, it first must decide whether it even has the authority to issue a preliminary injunction under the circumstances.

**B.     Preliminary Injunctions in Non-Equity Cases Are Controlled by *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999).**

In *Grupo*, the Supreme Court held that a federal district court lacks the authority to freeze assets in an action for damages where no lien or equitable interest in the assets is claimed. 527 U.S. at 332–33; *see also Karpov v. Karpov,* 555 F. App'x 146, 147 n.2 (3d Cir. 2014) (same; affirming district court's determination that it "lacked the authority" to issue an injunction preventing the defendant from transferring assets). The Court reasoned that the equity power of the federal courts equates with that exercised by the High Court of Chancery in England at the time of the adoption of the Constitution and the Judiciary Act of 1789. *Grupo*, 527 U.S. at 318.

2

Rule 65 has not altered the contours of this power. *Id.* at 318-19. The flexibility of equity must be "confined within the broad boundaries of traditional equitable relief," absent a federal statute which has expanded the traditional rules. *Id.* at 322. Therefore, absent an act by Congress bestowing additional power upon the courts, the traditional rule remains that the federal courts have no equity power to restrain a defendant from controlling or alienating its assets pending a decision in an action for money damages and before any judgment is entered. *Id.* at 333.

Since *Grupo*, district courts in the Third Circuit have nearly uniformly declined to grant preliminary injunctions in cases, such as the instant one, where only damages are sought and no judgment has been entered. *See, e.g., Novatek Corp. v. Mallet*, 324 F. Supp. 3d 560, 566 (E.D. Pa. 2018) ("Under the circumstances, we conclude that even if Novatek has proven the elements for a preliminary injunction . . . , Novatek asks for equitable relief this court has no power to grant."); *Wallace v. Powell*, CA Nos. 9-286, 9-291, 9-357, 9-630, 2014 WL 12638031, at *2 (M.D. Pa. Oct. 21, 2014) ("Under *Grupo*[,]. . . absent an equitable interest in the Avoca Fee or a claim for equitable relief, Plaintiffs' claim is not sufficient to warrant entry of a freeze order. And, because Plaintiffs have not identified an equitable basis upon which the prejudgment freeze sought here can be granted, the Supreme Court's decision in *Grupo* . . . forecloses Plaintiffs' request for a preliminary injunction."); *CNG Int'l v. Power Ptrs. Int'l, Inc.*, CA No. 01-1393, 2006 U.S. Dist. LEXIS 3603, at *3-*4 (W.D. Pa. Jan. 31, 2006) ("Plaintiffs make no allegation that they have an equitable claim to any of the assets defendant holds, or might obtain under the California judgment. Plaintiffs' arguments and authorities are simply unavailing in the face of controlling Supreme Court precedent."); *Smithson v. York Cnty. Court of Common Pleas*, CA No. 15-1794, 2016 U.S. Dist. LEXIS 102674, at *6 (M.D. Pa. Aug. 3, 2016) (citing *Grupo* for why court had no authority to grant "preliminary injunction freezing all of the defendants' assets until this case is resolved."); *Akers v. Akers*, CA No. 15-2512, 2015 U.S. Dist. LEXIS 100118, at *4 (E.D. Pa. July 31, 2015) ("A federal court has no authority generally to freeze a defendant's funds to help ensure satisfaction of a judgment should the plaintiff prevail on an underlying legal claim.") (citation omitted). Indeed, NVR does not point to a single post-*Grupo* case, nor can this Court find such a case, in which a court in the Third Circuit granted an asset freeze when only damages were sought and no prior judgment had been entered.

Further, NVR's attempt to distinguish *Grupo* is unpersuasive. NVR roots its argument in a footnote in *Grupo* which states:

> Although this is a diversity case, respondents' complaint sought the injunction pursuant to Rule 65, and the Second Circuit's decision was based on that rule and on federal equity principles. Petitioners argue for the first time before this Court that under *Erie RR. Co. v. Tompkins*, 304 U.S. 64 (1938), the availability of this injunction under Rule 65 should be determined by the law of the forum State (in this case New York). Because this argument was neither raised nor considered below, we decline to consider it.

[ECF 159, at 3] (quoting *Grupo*, 527 U.S. at 318 n. 3). NVR then argues that *Grupo* is inapposite because there the Supreme Court applied Rule 65 and federal equity principles whereas here the court should apply "the four federal injunction elements in light of state substantive law." *See* [*id.*, at 4-5] ("whether NVR meets the federal injunction standard

3

necessarily involves an analysis of state substantive law."). The Court disagrees, for three reasons.

First, NVR's argument stops short. The Court agrees that in a diversity case, state substantive law informs whether the elements of the federal preliminary injunction standard are met. For example, in analyzing NVR's reasonable probability of success on the merits (one of the four elements under Rule 65), the Court applies Pennsylvania law to NVR's underlying state-law claims. But the question left open by *Grupo* is different and it's this: is a federal court's *equity jurisdiction* a matter of state or federal law in a diversity case? NVR points to no authority that answers that question.

Second, the Court holds that even in diversity cases, a federal court's equitable jurisdiction (*i.e.*, the scope of and authority to issue certain equitable relief) is governed by federal principles. This is so because "post-*Erie* Supreme Court precedent suggests federal courts' equitable powers are limited, not by state law, but to the traditional powers exercised by English courts of equity, even in diversity cases." *Fid. & Deposit Co. of Md. v. Edward E. Gillen Co.*, 926 F.3d 318, 326 (7th Cir. 2019) (citing *Guaranty Tr. Co. of N.Y. v. York*, 326 U.S. 99, 105–07 (1945) ("Equitable relief in a federal court is of course subject to restrictions: the suit must be within the traditional scope of equity as historically evolved in the English Court of Chancery . . . .")); *Perfect Fit Indus., Inc. v. Acme Quilting Co.,* 646 F.2d 800, 806 (2d Cir. 1981) ("State law does not govern the scope of the equity powers of the federal court; and this is so even when state law supplies the rule of decision.") (citing *Guaranty*, 326 U.S. at 106); *see also* 19 Charles A. Wright, et al., Fed. Prac. & Proc. Juris. § 4513 (3d ed.) (describing how general principles inherited from England "led to the further doctrine that state law neither could expand nor restrict federal equity jurisdiction."); *Pusey & Jones Co. v. Hanssen*, 261 U.S. 491, 497 (1923) ("That a remedial right to proceed in a federal court sitting in equity cannot be enlarged by a state statute is likewise clear. The federal court may therefore be obliged to deny an equitable remedy which the plaintiff might have secured in state court.") (citations omitted). Therefore, this Court's federal equity jurisdiction (*i.e.*, whether it has the authority to order an asset freeze under these circumstances), simply cannot be expanded by state law.

Third, even if the Court could apply Pennsylvania equity principles rather than federal ones, this would not change the outcome of the Court's opinion. Indeed, the Eastern District of Pennsylvania examined this very argument last year and rejected it. *See Novtek*, 324 F. Supp. 3d 560. This Court is persuaded by that decision.

In *Novatek*, the plaintiff corporation filed an action against defendant, a former director and shareholder, for misappropriating significant company funds for personal use. *Id.* at 562. The case was removed from Pennsylvania state court based on diversity jurisdiction. *Id.* The plaintiff sought a preliminary injunction requiring the defendant to put into escrow the net proceeds from the sale of her home until the lawsuit was resolved. *Id.* The court reasoned that since the action sought damages in the amount of corporate funds that the defendant had improperly spent, it was "an action at law and not an equitable proceeding." *Id.* at 566. Applying the federal preliminary injunction standard, the court found that the relief was barred by *Grupo*. *Id.* at 566-67.

The court then addressed the plaintiff's argument that *Grupo* did not reach the question of whether the application of Pennsylvania equity principles, rather than federal, would allow the court to grant a preliminary injunction under such circumstances. *Id.* at 567. The court reasoned, "[e]ven assuming that we must apply state law, we must first determine what if anything the Pennsylvania Supreme Court has spoken on this subject. If there is no reported decision by the Pennsylvania Supreme Court addressing this issue, we must predict how the Pennsylvania Supreme Court would rule." *Id.* (citations omitted). The court specifically predicted that the Pennsylvania Supreme Court– which had not decided the issue of whether a prejudgment restraint on assets in a damages case may be imposed under Pennsylvania law – would not adopt the reasoning in *Walter v. Stacy*, 837 A.2d 1205 (Pa. Super. 2003) and *Ambrogi v. Reber*, 932 A.2d 969 (Pa. Super. 2007), since neither of these cases cited any supporting Pennsylvania Supreme Court precedent. *See id.* at 567-68. Instead, the court concluded that the Pennsylvania Supreme Court would turn to a state statute, 1 Pa. Cons. Stat. Ann. § 1503(a), that adopted most of the common law and statutes of England. *Id.* at 568. The Pennsylvania Supreme Court would then follow the reasoning of *Grupo*, in that the traditional equity principles "as existed in the late eighteenth century in England and as outlined in *Grupo* continue to be the law of the Commonwealth of Pennsylvania." *Id.* Consequently, the court reasoned it "need not decide whether under *Erie*" it "must apply the equity jurisprudence of the Commonwealth because it is the same as exists for the federal courts in this instance." *Id.*

*Novatek* is persuasive and directly on point. Like in *Novatek*, NVR cites no Pennsylvania Supreme Court precedent regarding the issue of whether a prejudgment asset freeze may be imposed in a damages case. Further as in *Novatek*, NVR cites the cases of *Walter*, 837 A.2d 1205 and *Ambrogi*, 932 A.2d 969,[1] which this Court finds unpersuasive for the same reasons set forth by the court in *Novatek*. NVR also cites a few other intermediate and trial court cases that refer to no Pennsylvania Supreme Court precedent,[2] and also cites one Pennsylvania Supreme Court case from 1958 that is distinguishable because the Court affirmed an asset freeze in an *equity* action brought before an *equity* docket.[3] Accordingly, the Court adopts the reasoning of *Novatek* and finds that even if this Court could apply Pennsylvania equitable principles under *Erie*,[4] it would not alter the holding of *Grupo*.

In short, because this Court does not have the authority to enter a preliminary injunction freezing assets in an action for damages where no lien or equitable interest in the assets is claimed, NVR's motion is denied.[5]

---

[1]  [ECF 159, at 7].

[2]  [*Id.*] (citing *Citizens Bank of Pa. v. Myers*, 872 A.2d 827, 836 (Pa. Super. 2005); *Canty v. Morris St. Partners, LLC*, 2006 Phila. Ct. Com. Pl. LEXIS 227, *9-*10 (Phila. Ct. Com. Pl. 2006); and *Eagle Nat'l Bank v. ISCP Funding, LLC*, 24 Pa. D. & C.5th 414, 421 (Phila. Ct. Com. Pl. 2011)).

[3]  [*Id.*] (citing *Pa. Turnpike Comm. v. Evans*, 139 A.2d 530, 533–34 (Pa. 1958)).

[4]  *See* discussion of the Court's federal equitable jurisdiction, *supra*, at 4.

[5]  Because this Court finds that it does not have the authority to enter an asset freeze, it will not address the merits of whether a preliminary injunction would otherwise be warranted.

## III. CONCLUSION

For all of the reasons discussed above, NVR's motion for preliminary injunction [ECF 142] will be **DENIED**. An appropriate Order follows.

DATED this 25th day of September, 2019.

BY THE COURT:

/s/ J. Nicholas Ranjan
J. NICHOLAS RANJAN
United States District Judge