## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NVR, INC., | ) | |
| Plaintiff, | ) ) ) | 2:18-CV-1335 |
| v. | ) ) | |
| MAJESTIC HILLS, LLC, et al., | ) ) ) | |
| Defendants, | ) ) | |
| v. | ) ) | |
| STRNISHA EXCAVATION, INC., and MORRIS KNOWLES & ASSOCIATES, INC., | ) ) ) ) | |
| Third-Party Defendants, | ) ) | |
| v. | ) ) | |
| THE GATEWAY ENGINEERS, INC., and MAJESTIC HILLS HOMEOWNERS ASSOCIATION, | ) ) ) ) | |
| Third-Party Defendants. | ) ) | |

## OPINION

**J. Nicholas Ranjan, United States District Judge**

Plaintiff NVR, Inc. (d/b/a Ryan Homes) builds and sells houses. In December 2004, NVR entered a Lot Purchase Agreement with Majestic Hills, LLC, in which the latter agreed to develop 179 single family lots across 107 acres located in North Strabane Township, Washington County, Pennsylvania to make them buildable for NVR to construct and sell its houses. ECF 419 (Ex. 20), p. 46; ECF 511-1. All appeared to go according to plan—lots were developed, and houses were built and sold. But in June 2018, a landslide at the sidehill embankment behind lots 37, 38, and 39 sank the hill onto the road below and forced the families living on those lots to vacate their homes. *E.g.*, ECF 513 (Ex. M), pp. 46-50. The Township then

condemned those houses, and NVR covered the expenses to relocate the affected homeowners.  *Id.*

Housing developments are large undertakings, requiring any number of participants to complete them—thus, completion of the Majestic Hills development gave rise to a web of written and unwritten contracts between, and duties owed among, a litany of players.  That web looks like this:

Majestic Hills, LLC was the developer and contractual counterparty to the Lot Purchase Agreement.  ECF 511-1 (Ex. A).  Defendant JND Properties, LLC is a management company that facilitates and executes real estate developments and was one of two investor-owners of Majestic Hills, LLC.[1]  ECF 442 (Ex. 36), 39:19-25, 44:9-16, 62:6-13.  Defendant Joe DeNardo was a partner of JND along with his wife, Defendant Shari DeNardo.  ECF 511-14 (Ex. O), pp. 1, 7.  Though Majestic Hills, LLC was the general contractor on the Majestic Hills development project, it was a corporate form organization without any employees who could perform any work.  ECF 442 (Ex. 36), 36:20-37:4.  So JND and Joe DeNardo (who was also Vice-President of Majestic Hills, LLC) were responsible for the management of the development to, in Mr. DeNardo's words, "make the project happen, which meant . . . hiring contractors, deciding on what contractors to use, taking it to the Township for approval, that kind of stuff."  *Id.* at 58:12-61:1.

Majestic Hills, LLC retained Defendant Pennsylvania Soil & Rock (PS&R), a geotechnical engineering firm (where Defendant Mark Brashear is an engineer), to perform construction and earthwork monitoring at the Majestic Hills development, including at the sidehill embankment behind Lots 37-39.  ECF 402 (Ex. 7 (PS&R field reports)); ECF 498, p. 2.

---

[1] The other investor in Majestic Hills, LLC was Park Ridge Development, LLC, which is not a party to this action.

JND hired Third-Party Defendant Morris Knowles & Associates as the civil engineer to prepare the development master plans, which included designs for grading plans and profiles, stormwater and sewar drainage plans, and erosion and control plans. ECF 500, pp. 7, 13. Majestic Hills, LLC applied for a grading permit, which included Morris Knowles's plans and designs, from North Strabane Township; the Township's engineer, Third-Party Defendant Gateway Engineers, Inc., approved the application. ECF 511-4 (Ex. D (grading permit application)).

Once the permit was acquired, Joe DeNardo hired Defendant Alton Industries, Inc. to perform the earthwork on Lots 1-76 (Phase 1 of the development), which in turn was monitored by PS&R. ECF 402 (Ex. 7); ECF 441 (Ex. 35), 51:4-52:22, 68:12-72:10. Part of that earthwork included building the sidehill embankment behind Lots 37-39. ECF 426, p. 4.

Third-Party Defendant Strnisha Excavation, Inc. performed repair work on Lots 31 and 41 in about 2015, but did no work during Phase 1 development. ECF 492 (Ex. 78). Third-Party Defendant Majestic Hills Homeowners Association (HOA) took title to the common area land in the development, including the sidehill embankment, in 2015. ECF 483, p. 2.

In October 2018, four months after the landslide, NVR sued the original "developer defendants" (Majestic Hills, JND, Joe DeNardo, Shari DeNardo, PS&R, Mark Brashear, and Alton) who performed or monitored the earthwork construction at the development during Phase 1. ECF 1; ECF 183. NVR alleged that the landslide resulted from faulty earthwork, planning, and monitoring on the sidehill embankment, amounting to breach of contract, negligence, negligent misrepresentation, and fraudulent misrepresentation. *Id.*

Majestic Hills, JND, Joe DeNardo, Shari DeNardo, PS&R, and Alton all filed crossclaims against each other and counterclaims against NVR for indemnification.

ECF 84; ECF 86; ECF 87.  Majestic Hills, JND, Joe DeNardo, and Shari DeNardo joined Strnisha (ECF 77) in February 2019 and Morris Knowles (ECF 166) in September 2019 as third-party defendants, seeking indemnification from both.  And Morris Knowles then joined Gateway (ECF 323) and the HOA (ECF 325) as additional third-party defendants, seeking indemnification, in August 2021.

During the discovery period, Majestic Hills filed for bankruptcy (ECF 224), and proceedings against it alone were stayed in June 2021 (ECF 294).  Discovery continued, and the remaining Defendants and Third-Party Defendants all moved for summary judgment on all claims, counterclaims, and crossclaims.  ECF 412 (Strnisha); ECF 423 (Gateway); ECF 425 (Alton); ECF 465 (JND); ECF 469 (Joe DeNardo); ECF 471 (Shari DeNardo); ECF 481 (HOA); ECF 497 (PS&R and Mark Brashear); ECF 499 (Morris Knowles).  NVR, JND, and the DeNardos opposed the motions (ECF 509, 510, 512).  This Court then held oral argument on the motions. ECF 526.  After oral argument, NVR filed a motion to supplement the record, in which it sought to introduce several additional documents, and also raised several new legal arguments. ECF 529.  Defendants opposed the motion to supplement.

As part of their summary-judgment motions, Defendants raised various defenses, including: (1) the statute of repose extinguished all of NVR's claims; (2) NVR has no contractual rights because no written or implied contract exists between NVR and any Defendant other than Majestic Hills; (3) NVR has no third-party contractual rights because it is an incidental, rather than intended, beneficiary to any contract; (4) no Defendant owed NVR a duty of ordinary care; (5) the economic loss doctrine bars NVR's recovery on its claims; and (6) the absence of a genuine dispute of material fact over tort or contract liability precludes NVR's claims.

Applying the familiar standard of Federal Rule of Civil Procedure 56,[2] the Court will grant summary judgment for Defendants Majestic Hills HOA, Strnisha, Morris Knowles, Gateway Engineers, Mark Brashear, and Shari DeNardo, as there is no evidence in the record to show—and the parties no longer argue—that these Defendants caused the June 2018 landslide. The Court will also grant summary judgment for Alton and PS&R, as NVR's claims against them were extinguished by the statute of repose. As to JND and Mr. DeNardo, the Court will grant summary judgment on Count VI (fraudulent misrepresentation) but will deny summary judgment on all other counts because of the existence of genuine disputes of material fact.

## DISCUSSION & ANALYSIS

I. **All claims, counterclaims, and crossclaims against the Majestic Hills Homeowners Association, Strnisha, Morris Knowles, Gateway Engineers, Mark Brashear, and Shari DeNardo will be dismissed.**

"[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006). The Court has reviewed the entire summary-judgment record, including the parties' expert reports, and finds that no party continues to argue that the Majestic Hills HOA, Strnisha, Morris Knowles, Gateway Engineers, Mark Brashear, or Shari

---

[2] Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At summary judgment, the Court must ask whether the evidence presents "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). In making this determination, "all reasonable inferences from the record must be drawn in favor of the nonmoving party and the court may not weigh the evidence or assess credibility." *Goldenstein v. Repossessors, Inc.*, 815 F.3d 142, 146 (3d Cir. 2016) (cleaned up). The moving party bears the initial burden to show the lack of a genuine dispute of material fact, and "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," summary judgment is improper. *Id.* (cleaned up).

DeNardo is liable for damages caused by the June 2018 landslide. Indeed, all parties conceded to the dismissal of these Defendants on the record at the March 2, 2023, oral argument. ECF 537, 68:7-73:14. Accordingly, all claims, counterclaims, and crossclaims against those Defendants are dismissed.

That leaves Alton, PS&R, JND, and Mr. DeNardo as the remaining Defendants.

## II.   The claims against Alton are barred by the statute of repose.

Alton argues that NVR's claims against it are barred by Pennsylvania's statute of repose. ECF 426, pp. 6-11. Under that statute, any lawsuit against a person or company performing or furnishing the design, planning, supervision, or observation of construction, or construction, of any "improvement" to real property must be filed within 12 years of completion of the improvement.[3] 42 Pa. Cons. Stat. § 5536(a). A plaintiff's failure to timely file within the period set by the statute of repose must result in dismissal of the claim because the statute of repose "completely abolishes and eliminates the cause of action" against the defendant. *Mitchell v. United Elevator Co.*, 434 A.2d 1243, 1248 (Pa. Super. Ct. 1981).

To invoke this defense, Alton "must show (1) that 12 years have lapsed since the construction, (2) that the construction is an 'improvement to real property,' and (3) that [it] falls within the class of persons the statute protects." *Fleck v. KDI Sylvan*

---

[3] The provision states in full: "a civil action or proceeding brought against any person lawfully performing or furnishing the design, planning, supervision or observation of construction, or construction of any improvement to real property must be commenced within 12 years after completion of construction of such improvement to recover damages for: (1) Any deficiency in the design, planning, supervision or observation of construction or construction of the improvement. (2) Injury to property, real or personal, arising out of any such deficiency. (3) Injury to the person or for wrongful death arising out of any such deficiency. (4) Contribution or indemnity for damages sustained on account of any injury mentioned in paragraph (2) or (3)." 42 Pa. Cons. Stat. § 5536(a).

*Pools, Inc.*, 981 F.2d 107, 114 (3d Cir. 1992). NVR only challenges the first element, arguing that it timely launched its lawsuit within 12 years of completion of construction to the sidehill embankment. ECF 512, pp. 6-10. So that is the focus of the Court's inquiry, which proceeds with the following steps. ***First***, the Court must find the "improvement" at issue; ***second***, it must determine the "completion date" for the improvement; and ***third***, it must determine whether the lawsuit was filed within 12 years of the completion, and if not, whether any statutory exception extends the statute of repose.

While the scope of this statute of repose is a question of law for the Court to decide, the Court must apply several facts to determine that scope. *Gilbert v. Synagro Cent., LLC*, 131 A.3d 1, 15 (Pa. 2015) ("[T]here may be cases in which a statute of repose's applicability turns on resolution of factual issues[.]"). In addressing any questions of fact, the Court views all evidence in the record and draws all reasonable inferences in the light most favorable to NVR.

### A. Phase 1 earthwork construction at the sidehill embankment behind Lots 37-39 is the relevant "improvement."

In the first step, the Court concludes that the relevant improvement here is the Phase 1 earthwork construction performed at the sidehill embankment behind Lots 37-39 to make those lots buildable.[4] That is because the injury and damages in NVR's complaint stem from the 2018 landslide at the embankment—and that landslide, it alleges, resulted from the discrete Phase 1 earthwork performed at that site. ECF 183, ¶ 126 ("As a result of the Defendants' acts and omissions as set forth herein, as well as the Defendants' failure to attempt to remedy or cure the defaults,

---

[4] Construction to make lots buildable is an improvement to real property under the statute of repose. *Noll by Noll v. Harrisburg Area YMCA*, 643 A.2d 81, 87 (Pa. 1994) ("[I]mprovements include: . . . the preparation of land for building sites." (citation omitted)).

***NVR has incurred considerable expense in order to prevent and mitigate the consequences of the potential catastrophe of the active landslide***.  These expenses include, but are not limited to: (1) engineering consultant fees to assess the risk posed to the homeowners of Lots 36, 37, 38, and 39; (2) costs associated with relocating the homeowners of Lots 37, 38, and 39 when the engineering consultant determined that the homes were unsafe; and, (3) attorney's fees and costs incurred as a result of NVR's efforts to compel North Strabane Township to demolish the homes on Lots 36, 37, 38, and 39 before the active landslide inevitably pulls the homes down." (emphasis added)); *see also id.*, ¶¶ 188 (alleging "Defendants' negligence caused multiple, catastrophic landslides at Majestic Hills, causing significant damage to property and endangering the lives of homeowners and the public"), 194 (alleging negligent misrepresentation regarding "lots abutting the sidehill embankment to homeowners"), 203 (alleging fraudulent misrepresentation regarding "lots abutting the sidehill embankment to homeowners"), 208-213 (alleging negligence as to PS&R regarding Phase 1 work, particularly at Lots 37-39).[5]

---

[5] The first amended complaint also addresses damages arising from a breach of contract pertaining to two other lots in the development (Lots 102 and 530). *E.g.*, ECF 183, ¶¶ 173 (Count 1 alleging breach of contract for work performed at Lots 37-39, 102, and 530), 182 (Count 3 alleging breach of contract against PS&R for work performed at Lot 530).  The Court addresses NVR's claim against PS&R regarding Lot 530 below but finds there is no genuine dispute of material fact about claims pertaining to Lot 102.  Though NVR's expert includes three paragraphs referencing Lot 102 in his 61-page report, those findings do not go to his conclusions, which refer to the cause of the June 2018 landslide from which NVR suffered damages.  ECF 513 (Ex. M), pp. 58-60.  And NVR did not mention Lot 102 in its summary-judgment brief or motion to supplement the record.  Lot 102, then, is not offered as a basis of recovery on NVR's claims, so the Court finds that NVR has abandoned any claims over it.  *Skirpan v. Pinnacle Health Hosps.*, No. 07-1703, 2010 WL 3632536, at *6 (M.D. Pa. Apr. 21, 2010) ("Where a plaintiff has brought a cause of action which is challenged through motion for summary judgment as legally insufficient, it is incumbent upon the plaintiff to affirmatively respond to the merits of a summary judgment motion.  Indeed, a Plaintiff's failure to respond to these arguments constitutes an abandonment of these causes of action and essentially acts as a waiver of these

### B.   Alton completed its improvement to the sidehill embankment no later than December 2005.

Moving to the next step in the analysis, the Court must identify the point when Alton completed its improvement to the embankment.  *Graver v. Foster Wheeler Corp.*, 96 A.3d 383, 386 (Pa. Super. Ct. 2014) ("[S]tatutes of repose begin to run upon the completion of certain conduct by a defendant.").   Pennsylvania courts have interpreted "completion" to mean "the point when third parties are first exposed to defects in design, planning, or construction."  *Venema v. Moser Builders, Inc.*, 284 A.3d 208, 213 (Pa. Super. Ct. 2022) (cleaned up).

The record indisputably establishes that Alton completed its earthwork activities on the sidehill embankment no later than December 2005.  Alton's billing records show its final invoice for Phase 1 earthwork activities at Majestic Hills was for the period ending December 1, 2005, and there is no other evidence in the record that Alton performed any work on the embankment after that time.  ECF 482 (Ex. 69).  One of NVR's corporate representatives testified Alton "had the site ready to be paved in . . . late summer, early fall of 2005."  ECF 444 (Ex. 38), 91:21-92:9.   NVR's expert opined in 2018 that Alton completed its work at the embankment even earlier, in July 2005.  ECF 513 (Ex. M), p. 163 (Attachment C, p. 4).  And Gateway's inspection reports show Alton completed work on the lots in August 2005.  ECF 476 (Ex. 64).  NVR also admits that Alton's "billing records indicate that it completed earthwork on Phase I no later than the first week of December 2005."  ECF 512, p. 7 (cleaned up).  Thus, there is no genuine dispute of material fact that Alton completed its improvement to the relevant site in December 2005 at the latest.

---

issues." (citations omitted)), *report and recommendation adopted*, No. 07-1703, 2010 WL 3632702 (M.D. Pa. Sept. 10, 2010).

As a result, under the 12-year statute of repose, NVR had until December 2017 to file its claims against Alton—meaning its claims were already extinguished when it filed suit on October 5, 2018.  ECF 1.

### C.   The Court rejects NVR's proposed alternative dates of "completion" for purposes of the statute of repose.

NVR attempts to save its claim by disputing when the improvement was completed.  NVR first tries to define the date of "completion" as the date of the sale of Lots 37-39 to the initial homeowners, which occurred on January 11, 2008, July 20, 2006, and June 8, 2006, respectively.  ECF 529, p. 2; ECF 537, pp. 16-17.  There are at least three problems with this proposition.

First, NVR's argument offends the plain language of the statute of repose, which demarcates the completion of an ***improvement*** to the real property at the Majestic Hills development as the point when the statute of repose begins to run. *Altoona Area Sch. Dist. v. Campbell*, 618 A.2d 1129, 1134 (Pa. Commw. Ct. 1992) ("[S]tatutes of repose run for a statutorily determined period of time after a definitely established event which commences the statutorily determined period of 12 years; that event is described in section 5536 as 'completion of construction of such improvement.'").  In other words, the specific improvement triggers the statute of repose, not the completion of the individual lot (let alone the final sale of the home on that lot).

Second, the scope of the improvement is limited to the work that the builder actually performs—that is, the statute of repose applies individually to each "improver" of real property, and begins to run at the moment that contractor completes its separate improvement, not when all contractors complete all work on a lot. *See Mitchell*, 434 A.2d at 1248-49 (elevator manufacturer "built and installed the elevator in this case while the apartment building was under construction in 1950,"

and statute of repose began to run for that Defendant at that time); *Beaver v. Dansk Industri Syndicat A/S (DISA)*, 838 F. Supp. 206, 209 n.1 (E.D. Pa. 1993) (statute of repose began to run when defendant started using molding machine in its production, exposing third-party employees, not when machine was completely built); *cf. Gnall v. Illinois Water Treatment Co.*, 640 F. Supp. 815, 821 (M.D. Pa. 1986) (noting trend in Pennsylvania state courts to extend protections of statute of repose "to any entity that has contributed to the formation of an 'improvement to real estate.'").

Third, NVR misunderstands what is meant by "the point when third parties are first exposed to defects" in the definition for "completion." *Venema*, 284 A.3d at 213. Third parties "are exposed to defects" when the "construction project is so far completed that it can be ***used*** by third parties." *Beaver*, 838 F. Supp. at 209 n.1 (emphasis added) (citation omitted). Alton made improvements to the sidehill embankment to prepare the land for building sites. ECF 183, ¶ 11 ("NVR relies on contracted, local land development companies to prepare the property for homebuilding according to all applicable contractual, statutory, and regulatory requirements. Only after the land development is completed, and the developer has certified that the land has been properly prepared for home construction, does NVR then purchase lots from the developer and begin its home construction activities."). Once the land was prepared, NVR, a third party, could "use" it to build homes.[6] Building on the lots is the relevant "use" in this context, not homeownership.

[6] NVR mistakenly relies on *Venema* in its motion to supplement the record for the proposition that "completion" only occurs when construction of the house is complete. ECF 529, p. 2. In *Venema*, homeowners sued the builders of their residence, and were ultimately barred by the statute of repose. *Venema*, 284 A.3d at 210. Completion of their residence marked completion of the improvement for purposes of the statute of repose because the relevant improvement was the residence itself. *Id.* ("Appellants filed several claims against Moser alleging that the defective construction of their residence had caused them damages."). It was only at that point that third parties could use the improvement for its intended purpose: living in the residence. *Id.* at 213 ("There can be no satisfactory result to a final inspection, nor a certificate of

NVR argues in the alternative that if the date of completion is not the sale dates of the homes on Lots 37-39, then it must be the date when the entire Phase 1 project was completed.  ECF 529, ¶ 4.  This argument fails for the same reasons as described above.  But it also fails because of how the project development occurred in this case.  As NVR argued at the March 2, 2023, hearing, development at Majestic Hills proceeded gradually, where lots in Phase 1 were developed, built upon, and sold at different points.  ECF 537, pp. 15:18-16:7.  The improvement here occurred on a discrete area of land, behind Lots 37-39; NVR doesn't offer any reason why the pending preparation of a separate plot of the development, unaffected by the landslide, should toll the statute of repose.

But even if the Court agreed with NVR on this point, its argument would still fall short as a factual matter.  The undisputed record shows that Phase 1 was completed no later than early 2006.  NVR's corporate representative testified that NVR was "taking down" lots, meaning beginning home construction, in August or September 2005.  ECF 443 (Ex. 37), pp. 50:11-51:9, 91:12-93:20; *see also* ECF 513 (Ex. M), p. 163 (Attachment C, p. 4) ("Prior to commencement of home building operations by Ryan Homes, rough grading was completed by Alton Industries (Alton) at the subject lots in July 2005.").  He elaborated that NVR delivered homes to customers "at the end of '05, beginning of '06 . . . .  So working backwards, for us to deliver a home January 1, '06, hence we need to have the lot for three or four months, our building cycle is fairly quick, so it would have been close to August 31[, 2005]."  ECF 443 (Ex. 37), 49:12-23.  NVR could not have started take down work in August or September 2005, and delivered homes by January 2006, if excavation work on the

occupancy, until construction of the residence is 'completed.'").  In this case, by contrast, the intended purpose of the relevant improvement is to create buildable land for NVR to construct houses.

sidehill was not already complete by that time.  *Id.*; ECF 442 (Ex. 36), 73:15-76:14 (J. DeNardo testifying that, for any development, excavation work is a prerequisite "before you move to put the infrastructure in").

Other undisputed facts support completion not later than early 2006.  North Strabane Township approved the release of an irrevocable line of credit issued on behalf of Majestic Hills, Phase 1 for final completion of the earthwork on January 25, 2006, suggesting Phase 1 work was complete at that time or soon after.  ECF 477 (Ex. 65).  And PS&R's last field report[7] for monitoring the "earthwork-related activities . . . during our time on site [at Majestic Hills]" is dated April 11, 2006.  ECF 402 (Ex. 7), p. 94-5.  In short, there is simply no evidence in the record to permit the Court to place completion of the earthwork on the sidehill embankment after April 2006.

So even in NVR's best-case scenario of completion in April 2006 (as opposed to December 2005), the 12-year statute of repose period still would have ended in April 2018, two months before the June 2018 landslide and six months before NVR filed its complaint.

**D.    The narrow exception extending the statute of repose to 14 years for late onset injuries does not apply.**

NVR next attempts to recast its injury as "earth movement within the Majestic Hills community," which "began in earnest by 2017" or about 11 years after completion of the earthwork on the sidehill embankment.  ECF 512, p. 9.  It does so to invoke a narrow exception to the 12-year statute of repose that allows a claimant to commence an action 14 years after completion of an improvement, if the injury

---

[7] The final field report refers to work on a "future recreational area."  ECF 402 (Ex. 7), p. 95.  But PS&R's penultimate field report is dated six months earlier in October 2005.  *Id.* at 91.  Given that gap, it seems likely Phase 1 work was actually completed even earlier than April 2006.

occurs "more than ten and within 12 years after completion of the improvement."  42 Pa. Cons. Stat. § 5536(b)(1).

But this argument fails because NVR cannot identify how "earth movement" in general has caused it an injury or damages.  NVR has consistently said that its damages resulted from the relocation and repairs stemming from the very specific 2018 landslide event at Lots 37-39.  Indeed, NVR retained an expert for just one reason: to determine the "triggering cause of the mass slope movement (the 'Massive Landslide') that occurred in 2018 near the intersection of Majestic Drive and Oakwood Drive in the Majestic Hills Plan of Lots."  ECF 513 (Ex. M), p. 2.

Additionally, general "earth movement" had occurred at the development for a decade before 2017—as NVR's expert explains, "[t]here were multiple slope failures that occurred both in cut and fill portions of the slope between Majestic Drive and Forest Lane Drive between 2007 and 2017, prior to the Massive Landslide of June 2018."  ECF 513 (Ex. M), p. 60.  NVR's expert does not characterize that earlier earth movement as an injury.  And NVR does not explain why earth movement from specifically 2017 was the start of its injury, as opposed to the same movement that had occurred throughout the prior ten years.

NVR's complaint and expert report leave no doubt that the alleged injury causing its damages was the 2018 landslide, not any general earth movement to which NVR now tries to anchor its claim.  The statutory exception does not apply.

### E.   Alton "lawfully performed" its work and thus is covered by the statute of repose.

Finally, NVR argues that Defendants cannot invoke the statute of repose because they did not comply with the terms of the grading permit, and so did not "lawfully" conduct work on the sidehill embankment.  ECF 529, p. 3.  That argument falls short.

- 14 -

Initially, NVR has waived this argument.  NVR never raised it in its summary-judgment brief.  ECF 512.  Instead, it moved the Court for leave to supplement the summary-judgment record after all briefing closed and after oral argument on the pending motions.  ECF 529.  But in doing so, NVR didn't supplement the record with any new facts to support the argument, and instead raised this new legal point, for the first time, in a very cursory fashion.  No Defendant had an opportunity to respond to this argument, and the Court is not inclined to re-open briefing on issues that could have been briefed several months ago.  For these reasons, the Court finds that NVR forfeited it.  *West v. Dan Lepore & Sons Co.*, No. 17-1592, 2019 WL 1227716, at *12 (E.D. Pa. Mar. 14, 2019) ("[F]ailure to mention or address claims in response to defendant's motion for summary judgment waives opportunity to contest summary judgment on that ground." (cleaned up)).

But even considering NVR's argument on the merits, it fails.  NVR's main point is that Alton, PS&R, and other contractors involved in the grading of the lots failed to comply with the grading permit.  NVR argues that violation of the grading permit means that Defendants unlawfully performed and cannot invoke the statute of repose.  ECF 529, p. 3; 42 Pa. Cons. Stat. § 5536(a) (offering protection to "any person lawfully performing" construction).  The Court disagrees with NVR's interpretation of the word "lawfully," as NVR conflates "lawful" with "legal."

As the Pennsylvania Superior Court noted in analyzing an analogous statute of repose, the term "lawful" is different than the term "legal."  *Branton v. Nicholas Meat, LLC*, 159 A.3d 540, 550 (Pa. Super. Ct. 2017).  To "lawfully" perform simply means to be authorized by law to perform.  *Id.*  "A simple illustration shows the distinction between 'lawful' and 'legal.'  If an individual who possess a valid driver's license is speeding, he is not legally operating the vehicle because he is driving over

the posted speed limit. Nonetheless, he is lawfully operating the vehicle because he is licensed to do so." *Id.* at 550 n.14.[8]

There is no dispute that Alton (and the other Defendants) were authorized by law to perform the work, and thus they "lawfully performed." That Defendants didn't comply with the terms of the grading permit, as NVR alleges, is beside the point because it goes to the "legality" of the conduct, not the "lawfulness" of the performance. Because there is no dispute of fact that Alton and the other Defendants were authorized by law to engage in the grading of the property, the Court finds that they are covered by the statute of repose.[9]

In the end, none of NVR's arguments against application of the statute of repose hold water. Thus, the Court will grant summary judgment for Alton and will dismiss all claims against it.

---

[8] The Court acknowledges that in *O.D. Anderson, Inc. v. Empaco Equipment Corp.*, No. 18-784, 2019 WL 1395606 (W.D. Pa. Mar. 20, 2019), Judge Horan took the approach that "lawfully" means that the contractor complies with law, not simply that it is authorized by law to perform—an approach seemingly at odds with *Branton*. *Id.* at *7. Judge Horan distinguished *Branton* as being "fact-dependent." *Id.* True, the Superior Court's ultimate holding depended on the facts of that case—but, more importantly, the Superior Court's discussion in *Branton* concerned more broadly the difference between the terms "lawfully" and "legally," and cited precedent from the Pennsylvania Supreme Court dating back to the 1893 for the long-held distinction between those terms. The Court finds this part of *Branton* to be a persuasive analysis of Pennsylvania law and so follows it.

[9] Even accepting NVR's presumed definition of "lawfully performing," NVR points to no case where violation of a grading permit alone is deemed to be violation of the law. For example, there is no evidence in the record that the Township cited Alton or the other Defendants for violating any ordinance or law due to their alleged non-compliance with the grading permit. Moreover, it would seem to run counter to the purpose of the statute of repose to allow a plaintiff to cite only a deviation from a permit as a basis to revive an "abolished" and "eliminated" claim. *Mitchell*, 434 A.2d at 1248. Indeed, NVR's position would effectively gut the statute; after all, any deficiency in the performance of construction can very likely be linked to some permit condition, particularly where, as here, the permit simply incorporates by reference several construction plans, agreements, and standards.

### III.   The claims against PS&R will be dismissed based on the statute of repose and in the absence of any genuine dispute of material fact on liability.

PS&R moves for summary judgment on the same grounds as Alton—that the statute of repose eliminated any cause of action against it.  ECF 498, p. 10.  It also moves to dismiss Count III of the first amended complaint, citing the absence of a genuine dispute of material fact as to liability.  The Court agrees on both points.

#### A.   The statute of repose extinguished the claims against PS&R arising from the June 2018 landslide.

NVR's claims at Counts II, V, VI, VII, VIII, IX, and XI[10] of the first amended complaint against PS&R allege injury and damages resulting from the June 2018 landslide.  ECF 183, pp. 31-32, 35-43.  But the statute of repose extinguished these claims against PS&R.

As with Alton, NVR only challenges the first prong of the statute-of-repose test, which concerns the "completion" date of the improvement.  But the facts supporting Alton's dismissal from the case, as outlined above, apply in equal force to PS&R.  The undisputed record shows that PS&R finished its Phase 1 earthwork activities on the sidehill embankment not later than April 2006, so the statute of repose began to run at that time.  That means NVR's claims against PS&R pertaining to the sidehill embankment extinguished in April 2018, two months before the June 2018 landslide and six months before NVR filed suit.

NVR disputes that PS&R completed its improvement on the sidehill embankment at that time.  It points to a fill evaluation that PS&R performed throughout the Phase 1 site, including on at least one lot along the sidehill

---

[10] The first amended complaint alleges a Count X twice: the first is for negligence against Alton, and the second is for indemnification against Majestic Hills, LLC and PS&R.  The Court refers to the latter Count X as Count XI for clarity.

embankment, and which was not complete until October 2006.  ECF 511-8.  That would put the June 2018 landslide within the exception to the statute of repose and extend the life of NVR's claim to October 2020.  But the existence of the fill evaluation actually supports PS&R's argument that its improvement to the embankment was already complete.

NVR independently hired PS&R to conduct the fill evaluation in January 2006. ECF 183, ¶ 77 ("In 2006, NVR hired PS&R to complete a Fill Evaluation at Majestic Hills."); ECF 443 (Ex. 37), p. 51 (NVR's corporate representative (J. Sack) testifying that NVR hired PS&R in January 2006).  By that point, the Phase 1 earthwork was in fact complete, and NVR was ready to construct houses.  ECF 443, (Ex. 37 (Depo. Tr. of NVR Corp. Rep. J. Sack)), 51:15-52:1 ("I think at that point we had had discussions with PS&R and we wanted to be certain that all the site prep was done correctly and we wanted their advice to make sure that was in fact the case.").

To begin home construction, NVR needed to know the then-present condition of the soil at the lots across the development.  Earthwork on at least some lots had been complete for months, while the rest were finished by December 2005, and so the soil's exposure to the elements dictated how NVR should build its houses.  ECF 486 (Ex. 72) (PS&R Corp. Rep.), 57:14-58:18.  The purpose of the fill evaluation, then, was to make recommendations to NVR about to how to lay the foundations for the houses at the already completed lots.  ECF 486 (Ex. 72 (Depo. Tr. of PS&R Corp. Rep. A. Caffas)), 75:14-17 ("A: So, the result of the fill evaluation is to give Ryan Homes recommendations about its foundations for its homes? A: Foundations, yes."); ECF 443 (Ex. 37 (Depo. Tr. of NVR Corp. Rep. J. Sack)), 53:14-18 ("I mean ultimately PS&R gave us a chart, which I believe has been produced, which said what the fill— *when we dug the foundation how much backfill there had to be, how much front fill, whether any crossbeam was needed*." (emphasis added)).  NVR admits

exactly that in its brief: "[PS&R] provid[ed] the Fill Evaluation . . . directly to NVR to aid NVR in its construction of foundations and houses on the finished lots."  ECF 510, p. 25.  Thus, the record shows that the fill evaluation was a separate project related to house construction, and it began only after the earthwork improvement on the lots was complete.  It was not part of the grading work on Lots 37-39, which was the asserted cause of the landslide.

### B.  Fraudulent concealment does not toll the statute of repose.

NVR also argues that fraudulent concealment allegedly committed by PS&R equitably tolls the statute of repose.  ECF 510, p. 10.  Though the Pennsylvania Supreme Court has advised that "statutes of repose . . . generally may not be tolled, even in cases of extraordinary circumstances beyond a plaintiff's control," *Dubose v. Quinlan*, 173 A.3d 634, 644-45 (Pa. 2017), it has not addressed whether section 5536 specifically is subject to equitable tolling.  So this Court "must predict how that court would decide this issue.  In so doing, [it] must also give due deference to decisions of the lower Pennsylvania courts."  *Winterberg v. Transp. Ins. Co.*, 72 F.3d 318, 321-22 (3d Cir. 1995) (citation omitted).

State and federal courts in Pennsylvania are split as to whether the doctrine of fraudulent concealment tolls the state's statutes of repose in general.  *E.g.*, *Osborne v. Lewis*, 59 A.3d 1109, 1117 (Pa. Super. Ct. 2012) (Fraudulent concealment does not toll (since-preempted) statute of repose in the MCARE Act because the Act "[did] not expressly provide an exception for fraudulent concealment."); *Sharon Steel Corp. v. W.C.A.B. (Myers)*, 670 A.2d 1194, 1200 (Pa. Commw. Ct. 1996) (enumerating specific conduct that would toll the statute of repose of the Workmen's Compensation Act).[11]

---

[11] In dicta, and in the limited context of the Workmen's Compensation Act, the Supreme Court of Pennsylvania referenced *Sharon Steel* with apparent approval. *Westinghouse Elec. Corp./CBS v. W.C.A.B. (Korach)*, 883 A.2d 579, 587 (Pa. 2005).

And there is no controlling authority on whether the doctrine tolls the specific construction statute of repose at issue.[12]  On close inspection, the Court predicts that, if faced with this issue, the Pennsylvania Supreme Court will hold that fraudulent concealment cannot toll the statute of repose.  The Court is guided by two main considerations.

First, the nature of a statute of repose precludes application of equitable tolling.  A statute of repose is a substantive defense that "completely abolishes and eliminates [a plaintiff's] cause of action itself," not just the right to recovery.  *Vargo v. Koppers Co., Eng'g & Const. Div.*, 715 A.2d 423, 425 (Pa. 1998) (cleaned up); *Campbell*, 618 A.2d at 1134 ("[S]tatutes of repose are substantive in nature because they extinguish a cause of action and preclude its revival.").[13]

By contrast, statutes of limitations "are procedural devices which bar ***recovery on a viable cause of action***[.]"  *Campbell*, 618 A.2d at 1134 (emphasis added); *see also Vargo*, 715 A.2d at 425 ("[S]tatutes of limitation limit the time in which a plaintiff may bring suit after the cause of action accrues." (quoting *McConnaughey v. Building Components, Inc.*, 637 A.2d 1331, 1332 n.1 (Pa. 1994))).  Note the significant difference: with a statute of limitations, there is no right to recovery, but with a statute of repose, there is no longer a cause of action.  Given that substantive distinction, "it is easy to understand why a statute of repose is typically an absolute

---

[12] Over 20 years ago, in *Stone & Webster Eng'g Corp. v. Duquesne Light Co.*, the federal district court in the district of Massachusetts concluded that "reading the Pennsylvania tea leaves suggests that the doctrine of equitable tolling will apply to the Pennsylvania Construction Statute of Repose."  79 F. Supp. 2d 1, 9 (D. Mass. 2000).  But no Pennsylvania court has reached that conclusion since then.

[13] That is a powerful rule, so much so that, "unlike a statute of limitations, a statute of repose is not waived if not pled as an affirmative defense, and may be raised for the first time in a motion for nonsuit, directed verdict, or judgment n.o.v."  *Vargo*, A.2d at 425 n.1.

time limit beyond which liability no longer exists and is not tolled for any reason." *Williams v. Wells Fargo Home Mortg., Inc.*, 410 F. App'x 495, 499 (3d Cir. 2011) (cleaned up).

Second, the Court must take the text and legislative intent of the statue of repose as its guides and must not thwart either of them. *Columbia Gas of Pa., Inc. v. Carl E. Baker, Inc.*, 667 A.2d 404, 408 (Pa. Super. 1995) ("In interpreting a statute, we are also required to ascertain and effectuate the intent of the legislature as expressed in the statute.") (citation omitted). Applying an equitable toll here would do just that.

"The best indication of legislative intent is the plain language of the statute." *Roverano v. John Crane, Inc.*, 226 A.3d 526, 535 (Pa. 2020) (citation omitted). And the plain terms of section 5536 reveal the Pennsylvania General Assembly's intent not only to limit causes of action against architects and engineers, but to outright eliminate them after 12 years. The statute specifies two clear exceptions to the general 12-year time frame: the first, as already mentioned, extends the life of a claim to 14 years for a late-onset injury, and the second prohibits the person in possession or control of real property at the time of the injury from invoking the statute. 42 Pa. Cons. Stat. § 5536(b). That's it. And if those limited exceptions weren't clear enough, the statute adds: "This section shall not extend the period within which any civil action or proceeding may be commenced under any provision of law." 42 Pa. Cons. Stat. § 5536(c).

Legislative history also shows that section 5536 "was passed to protect architects, engineers and contractors from lawsuits filed long after the improvements to real estate were completed." *Manheim Cent. Sch. Dist. v. Foreman Architects-Engineers, Inc.*, No. 16-2311, 2017 WL 10440562, at *5 (Pa. Ct. Com. Pl. Mar. 23, 2017) (citation omitted). That history reflects a "legislative decision that as a matter

of policy there should be a specific time beyond which a defendant should no longer be subjected to protracted liability." *Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2051 (2017) (cleaned up); *see also id.* ("For this reason, the Court repeatedly has stated in broad terms that statutes of repose are not subject to equitable tolling.").

The General Assembly could have included an exception to the statute of repose for fraudulent concealment, as it has with other statutes of repose. *Manheim Cent. School Dist.*, 2017 WL 10440562, at *5 ("While other statutes of repose have been found subject to tolling, those have explicit exceptions for such tolling or are contained in statutes with distinctly different purposes."). But it chose not to, likely because, given the nature of construction work and the time improvements "might remain standing and occupied, the application of equitable tolling in construction cases might have the effect of negating the statute of repose entirely." *Id.* The Court will not read a far-reaching exception into the statute without any evidence of intent that such an exception should exist. *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 330 (2006) ("A court cannot use its remedial powers to circumvent the intent of the legislature." (cleaned up)).

In sum, the nature of the statute, the text of section 5536, and the expressed intent of the General Assembly show that the statute of repose is not subject to equitable tolling for any reason. Given these considerations, and in the absence of persuasive authority to the contrary, the Court predicts that the Pennsylvania Supreme Court would not apply equitable tolling to section 5536. Thus, the statute of repose extinguished NVR's claims against PS&R when it filed suit more than 12 years after completion of the sidehill embankment. For these reasons, the claims at Counts II, V, VI, VII, VIII, IX, and XI against PS&R are barred.

**C.      There is no evidence that PS&R breached the 2006 Agreement.**

NVR's claim against PS&R at Count III is different from its other claims in that it is based on a separate injury and for work done pursuant to a separate contract between NVR and PS&R.  In Count III, NVR alleges that PS&R breached a 2006 professional services agreement with NVR concerning development of Lot 530 (an entirely separate lot in a different part of the development) by failing to accurately conduct a "presumptive bearing evaluation" of the soil fill and make proper recommendations regarding the lot in 2014.  ECF 183, p. 32.  According to NVR, because of this breach, settlement issues eventually appeared in early 2018 that caused the home that was built on the lot to crack, which NVR had to repair.  *Id.*

But PS&R is entitled to summary judgment because it did not breach the 2006 agreement.  The agreement expired in 2011 by its clear terms, and there is no evidence that the parties renewed it.  ECF 399 (Ex. 4), p. 9 ("This Agreement shall continue in full force and effect unless specifically terminated or for a period of five (5) years, whichever first occurs.").  So, by the time NVR performed the work at Lot 530, the 2006 agreement had already expired.  NVR doesn't argue to the contrary in its brief.  ECF 513.

Thus, there is no genuine dispute of material fact over Count III, so judgment will be entered in favor of PS&R on that count.  As NVR has no surviving claims against PS&R, the Court will dismiss it from this case.

**IV.  Disputes of material fact exist regarding NVR's claims against JND and Joe DeNardo.[14]**

Having dismissed the other parties, only JND and Joe DeNardo remain as Defendants in this case.  NVR raises claims for breach of contract, negligence, and

---

[14] Importantly, the statute of repose doesn't just result in the dismissal of claims by NVR—it also compels the dismissal of any claims for contribution or indemnity that JND or Joe DeNardo might seek from the now-dismissed Defendants.  42 Pa. Cons.

negligent and fraudulent misrepresentation against them.   The Court will deny summary judgment as to the contract, negligence, and negligent misrepresentation counts, but will grant summary judgment as to the fraudulent misrepresentation claim at Count VI.

### A.   The record supports the existence of an implied-in-fact contract between Majestic Hills, LLC and JND, Joe DeNardo, or both, that was intended to benefit NVR.

JND and Mr. DeNardo argue that NVR's contract claim falls flat because NVR is not a party to any written contract with JND or Mr. DeNardo.  They also deny that NVR is an intended third-party beneficiary of a contract between Majestic Hills  and JND, Mr. DeNardo, or both, because, to have that status, NVR must point to a written contract that manifests an intent to benefit NVR; otherwise, NVR is merely an incidental beneficiary with no contractual rights.  ECF 468, pp. 5-6; ECF 470, pp. 5-6. The Court disagrees.

 "A contract implied in fact is an actual contract which arises where the parties agree upon the obligations to be incurred, but their intention, instead of being expressed in words, is inferred from acts in the light of the surrounding circumstances." *Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 983 A.2d 652, 659 (Pa. 2009) (citation omitted).  An implied-in-fact contract "has the same legal effect as any other contract." *Id.* at 661.

Parties to an implied contract can also manifest an intention to benefit a third-party in certain "compelling" circumstances. *Scarpitti v. Weborg*, 609 A.2d 147, 150-

---

Stat. § 5536(a) ("[A] civil action or proceeding brought against any person lawfully performing or furnishing the design, planning, supervision or observation of construction, or construction of any improvement to real property must be commenced within 12 years after completion of construction of such improvement to recover damages for: (4) Contribution or indemnity for damages sustained on account of any injury mentioned in paragraph (2) or (3).").

51 (Pa. 1992).  To raise this limited exception, the claimed third-party beneficiary must show that "recognition of the beneficiary's right is appropriate to effectuate the intention of the parties, and the performance satisfies an obligation of the promisee to pay money to the beneficiary or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance."  *Id.*

Viewing the evidence and construing all inferences in the light most favorable to NVR, the Court finds there is a genuine dispute of material fact as to the existence of an implied-in-fact contract between Majestic Hills, on one hand, and JND, Mr. DeNardo, or both, on the other.  And there is a genuine dispute of fact that such an implied-in-fact contract was intended to benefit NVR.

Majestic Hills was the general contractor for the development, ECF 442, Ex. 36, 64:5-8, and JND and Mr. DeNardo worked as the manager of the development site, as "it was my [Joe DeNardo's] knowledge of the development that—the aspects of the development that was utilized to facilitate the project.  So my role was—JND Properties' role was to act as the manager of the project."  ECF 442 (Ex. 36), 59:23-60:12.  That role specifically involved "hiring contractors, deciding on what contractors to use, taking it to the Township for approval, that kind of stuff[.]").  ECF 442, Ex. 36, 58:12-61:1.  Day-to-day, JND "was involved with the scheduling and the, you know, overseeing the—the subcontractors that were involved with the project." *Id.* at 62:21-63:4.  JND also installed utilities, including storm drains, at the development.  *Id.* at 61:7-14, 63:5-16.

Based on these facts, a jury could find this conduct "show[ed] a mutual intention to contract" between the parties to support an implied contract, *Liss & Marion*, 983 A.2d at 659, making summary judgment inappropriate.  *Ametek, Inc. v.*

*FedEx Trade Networks Transp. & Brokerage, Inc.*, No. 20-3140, 2023 WL 115299, at *7-8 (E.D. Pa. Jan. 5, 2023).[15]

The record also reflects a genuine dispute of material fact over the parties' intent to benefit NVR.  Mr. DeNardo was a signatory to the Lot Purchase Agreement on behalf of Majestic Hills.  ECF 511-1, p. 18.  The Court therefore infers that both JND and Mr. DeNardo knew and understood that the purpose of their work at the development was to create buildable lots on which NVR could construct houses.

The Pennsylvania Supreme Court's decision in *Scarpitti* illustrates this point.  There, the Court held that homeowners in a development community were the intended third-party beneficiaries of an implied-in-fact contract between the development architect and the developer.  *Scarpitti*, 609 A.2d at 151.  The court concluded that "the architect is the promisor, promising to enforce deed restrictions which carry out the developer's intention to benefit the homeowners.  The developer, the promisee, intends that the homeowners have the benefit of the architect's performance.  Thus, it is patently clear that the parties, by establishing a vehicle for

---

[15] Because this evidence shows Mr. DeNardo wore three hats—as an agent of Majestic Hills and JND, and in his individual capacity—sometimes at the same time, there is a genuine dispute of material fact whether he in his individual capacity formed a contract with Majestic Hills.  *See* ECF 482 (Ex. 72), 24:18-26:10 (When asked which of JND, Joe DeNardo, and Majestic Hills was PS&R's client, PS&R's corporate representative testified that they were indistinguishable, "those are all the same.").  That is the only basis by which to hold him responsible for breach of contract, as it is well-settled that "[w]henever a corporation makes a contract, it is the contract of the legal entity—of the artificial being created by the charter—and not the contract of the individual members."  *Tray, Inc. v. Devon Int'l Grp., Inc.*, No. 21-1254, 2021 WL 1734845, at *5 (E.D. Pa. May 3, 2021).  Participation theory, where an officer of a company may be held personally liable for taking part in a tort, does not apply to breach-of-contract claims.  *Id.* ("Unless the corporate officer extends promises ***in his individual capacity***, the participation theory does not apply in the context of an action for breach of contact." (emphasis added)).

the enforcement of deed restrictions, intended to benefit the homeowners who purchased lots in the Winchester South Subdivision." *Id.*

Similarly, here, a jury could find that JND, Mr. DeNardo, or both was the promisor, promising to improve the land, and they carried out Majestic Hills's obligations to benefit NVR; and Majestic Hills was the promisee, which intended that NVR have the benefit of Defendants' performance.  The Court therefore concludes that a reasonable jury could find these Defendants intended to benefit NVR.

For these reasons, the Court finds that NVR's contract claim at Count II against JND and Mr. DeNardo survive and so will deny JND and Mr. DeNardo's motions for summary judgment as to that count.

### B.   NVR waived its claim for fraudulent misrepresentation by failing to defend it at summary judgment.

The Court turns now to NVR's three tort claims, alleging negligence (Count IV), negligent misrepresentation (Count V), and fraudulent misrepresentation (Count VI).  The Court may quickly dispose of the last claim because NVR has failed to defend it at summary judgment.

"[A] Plaintiff's failure to respond to [ ] arguments constitutes an abandonment of these causes of action and essentially acts as a waiver of these issues." *Skirpan*, 2010 WL 3632536, at *6.  JND and Mr. DeNardo have moved for summary judgment on NVR's fraudulent misrepresentation claim on grounds NVR does not point to evidence that they made a "fraudulent utterance" to NVR, a necessary element to support the claim.[16]  ECF 468, pp. 7-8; ECF 470, p. 8.  The Court agrees.  NVR does

---

[16] The elements of fraudulent misrepresentation are: "(1) a misrepresentation, (2) a fraudulent utterance thereof, (3) an intention by the maker that the recipient will thereby be induced to act, (4) justifiable reliance by the recipient upon the misrepresentation, and (5) damage to the recipient as a proximate result." *Mellon Bank Corp. v. First Union Real Estate Equity & Mortg. Invs.*, 951 F.2d 1399, 1409 (3d Cir. 1991) (cleaned up).

not point to any fraudulent utterance by these Defendants, nor for that matter evidence supporting any element of fraudulent misrepresentation. Because NVR has not raised a genuine dispute of material fact that would permit the Court to send this claim to the jury, the Court will grant summary judgment in favor of JND and Mr. DeNardo as to Count VI.

### C. JND and Mr. DeNardo owed NVR a common law duty of ordinary care.

JND and Mr. DeNardo next argue that NVR's negligence and negligent misrepresentation claims must fail because there is "no direct connection" between either party and NVR, so they cannot have owed NVR any duty, a necessary element of both claims.[17]  ECF 468, pp. 6-7; ECF 470, pp. 7-8.  But a duty of care arises from public policy considerations, not a contract, as Defendants suggest, and its existence is a question of law for the Court to decide. *Zaftr Inc. v. Lawrence*, 21-2177, 2023 WL 349256, at *29 (E.D. Pa. Jan. 20, 2023) (citing *R.W. v. Manzek*, 888 A.2d 740, 746 (Pa. 2005)).

To determine the existence of a duty, the Court must examine: "(1) the relationships between the parties; (2) the social utility of the defendant's conduct; (3)

---

[17] The elements of negligence are (1) duty; (2) breach; (3) causation; and (4) damages. The elements of negligent misrepresentation are "(1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation," and, "like any action in negligence, there must be an existence of a duty owed by one party to another." *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270, 277 (Pa. 2005) (citation omitted).  Nondisclosure can support a negligent misrepresentation claim. *Tress v. AXA Advisors, LLC*, No. 11-7713, 2013 WL 12248219, at *8 (E.D. Pa. June 6, 2013).  The same duty of reasonable care ultimately applies to both causes of action. *See* Restatement (Second) of Torts § 552 (1977), Comment a (Liability for negligent misrepresentation "is based upon negligence of the actor in failing to exercise reasonable care or competence in supplying correct information[.]").

the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the defendant; and (5) the overall public interest in the proposed solution." *Punch v. Dollar Tree Stores, Inc.*, No. 12-154, 2017 WL 752396, at *13 (W.D. Pa. Feb. 17, 2017) (Baxter, J.) (citing *Althaus v. Cohen*, 756 A.2d 1166, 1169 (Pa. 2000)), *report and recommendation adopted*, No. 12-154E, 2017 WL 1159735 (W.D. Pa. Mar. 29, 2017).  No single factor is dispositive.  "Rather, a duty will be found to exist where the balance of these factors weighs in favor of placing such a burden on a defendant." *Phillips v. Cricket Lighters*, 841 A.2d 1000, 1008-09 (Pa. 2003).  The Court weighs these factors as follows:

- **Relationship between the parties**: The developer-purchaser relationship between the parties means that JND and Mr. DeNardo were well aware that the purpose of their work was to provide buildable lots for NVR.[18] *See Bilt-Rite*, 866 A.2d at 286 ("Liability arises from the negligent breach of a common law duty of care flowing from the parties' working relationship." (citation omitted)); *cf. Sharpe v. St. Luke's Hosp.*, 821 A.2d 1215, 1219 (Pa. 2003) (hospital owed duty of care in collection and handling of urine sample in drug test because hospital "was aware of the purpose of the urine screening" and "in turn, should have realized that any negligence with respect to the handling of the specimen could harm [plaintiff's] employment").

- **Social utility**: Real estate development certainly has social utility, so this factor cuts in favor of Defendants.

---

[18] ECF 442 (Ex. 36), 59:23-60:12 ("it was my [Joe DeNardo's] knowledge of the development that—the aspects of the development that was utilized to facilitate the project.  So my role was—JND Properties' role was to act as the manager of the project.").

- **Foreseeability of harm**: JND and Mr. DeNardo understood that the negligent performance of their work could foreseeably harm NVR. *See* ECF 398 (Ex. 3), p. 13 (Lot Purchase Agreement signed by Joe DeNardo). Indeed, these Defendants' involvement at the site was not cursory but extensive, as Mr. DeNardo testified that JND "led that charge to make the project happen, which meant, you know, hiring contractors, deciding on what contractors to use, taking it to the Township for approval, that kind of stuff." ECF 442 (Ex. 36), 58:12-61:1. There is also evidence showing JND and Mr. DeNardo directed other subcontractors' work. *See, e.g.*, ECF 402 (Ex. 7), p. 6 (PS&R field report stating drafter met "with Joe DeNardo of JND Property and he requested that PS&R only be present for major keyway cuts.").

- **Consequences**: The consequences of imposing a duty on these Defendants is minimal, since they are "in the best position to ensure the non-negligent" performance of work on the sidehill embankment and "limit its liability by acting reasonably." *Sharpe*, 821 A.2d 1219-20.

- **Public interest**: The public interest in imposing a duty on the Defendants here does not favor one side or the other.

Since these factors, taken together, favor imposing a duty on the Defendants, the Court finds that JND and Mr. DeNardo owed a duty of reasonable care to NVR in the performance of their work on the sidehill embankment. This finding is narrow, however. The Court does not hold that a developer always owes a duty of care to a homebuilder, but premises the duty in this specific case on JND and Mr. DeNardo's uniquely close relationship to Majestic Hills, and in turn, NVR.[19]

---

[19] JND and Mr. DeNardo do not argue against the remaining elements of negligence and negligent misrepresentation, so the Court need not address them. Even so, the record shows the existence of a dispute of material fact as to those elements. NVR's

### D.    The economic loss doctrine does not bar NVR's surviving tort claims.

Finally, JND and Mr. DeNardo argue that the Court must dismiss NVR's tort claims under the economic loss doctrine because the damages NVR seeks are purely economic and were not foreseeable to JND or Mr. DeNardo, and there is no relationship between them and NVR to support liability.  ECF 468, pp. 11-12.  This argument comes up short for two reasons.

First, the economic loss doctrine only precludes recovery of purely economic loss for breaches of duties arising from contract, but does not bar recovery for breaches of duties arising independently in tort.  *Dittman v. UPMC*, 196 A.3d 1036, 1054 (Pa. 2018) ("[I]f the duty arises under a contract between the parties, a tort action will not lie from a breach of that duty. However, if the duty arises independently of any contractual duties between the parties, then a breach of that duty may support a tort action.").  Because the Court has already found Defendants owed NVR a duty of reasonable care in the performance of their work that exists outside any contractual obligation, the economic loss doctrine does not prohibit NVR's recovery.

Second, NVR has set forth at least some damages that are recoverable, such as engineering consulting fees and the cost of relocating families, that could reasonably

_____

expert points to a PS&R field report, in which Mr. DeNardo "requested that PS&R only be present for major keyway cuts" for work on the sidehill embankment.  ECF 513 (Ex. M) pp. 21-22 (referring to June 10, 2005 PS&R field report at ECF 402 (Ex. 7), p. 6).  That lack of oversight "is a quality control failure to assure that a stable side-fill embankment would be constructed" that in turn caused the landslide and forced NVR to incur costs.  *Id.* at 22; *see also id.* at 60 ("Lack of quality control and circumvention of the recommendations by PS&R's registered Professional Engineer who issued the April 12, 2005 letter contributed to diminished stability of the side-hill embankment at Lots 37, 38 and 39.").  That is enough to let the jury decide whether Defendants' actions amounted to breach of their duty—as affirmative negligent conduct, or as a negligent failure to disclose with intent to induce reliance—that caused NVR's injuries.

result from a landslide caused by insufficient oversight or improper instructions during the excavation work on the sidehill embankment, as NVR alleges.  ECF 512, pp. 23-24.  If NVR seeks certain damages that are not recoverable due to the economic loss doctrine or otherwise, that issue can be addressed by motions *in limine* before trial.  *In re Flat Glass Antitrust Litig. (II)*, No. 11-658, 2014 WL 4384534, at *2 (W.D. Pa. Sept. 4, 2014) (Ambrose, J.).

## **CONCLUSION**

For the reasons above, the Court will grant the motions for summary judgment for the Majestic Hills Homeowners Association, Strnisha, Morris Knowles, Gateway Engineers, Alton, PS&R, Mark Brashear, and Shari DeNardo, and dismiss them from the case.  The Court will also grant summary judgment for JND and Mr. DeNardo as to Count VI (fraudulent misrepresentation), but will deny summary judgment as to Counts II (breach of contract), IV (negligence), and V (negligent misrepresentation).  An appropriate order follows.


DATED this 21st day of April, 2023.

BY THE COURT:


/s/ *J. Nicholas Ranjan*
United States District Judge

- 32 -