## IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NVR, INC., | ) | |
| Plaintiff, | ) )  ) | 2:18-CV-1335 |
| v. | ) ) | |
| MAJESTIC HILLS, LLC, et al., | ) ) ) | |
| Defendants, | ) ) | |
| v. | ) ) | |
| STRNISHA EXCAVATION, INC., and MORRIS KNOWLES & ASSOCIATES, INC., | ) ) ) ) | |
| Third-Party Defendants, | ) ) | |
| v. | ) ) | |
| THE GATEWAY ENGINEERS, INC., and MAJESTIC HILLS HOMEOWNERS ASSOCIATION, | ) ) ) ) | |
| Third-Party Defendants. | ) | |

## <u>MEMORANDUM ORDER</u>

Before the Court are motions in limine filed by Plaintiff NVR (ECF 562, ECF 564, ECF 566) and Defendant Joseph DeNardo (ECF 568, ECF 570, ECF 572, ECF 574, ECF 576, ECF 578, ECF 580).  The Court issues this omnibus order resolving the motions as follows.

## I.    PLAINTIFF'S MOTIONS

### A.    Plaintiff's motion in limine to preclude argument raising the statute-of-repose defense (ECF 562).

The motion is **DENIED**.  NVR seeks to preclude Mr. DeNardo from raising the statute of repose defense on equitable grounds and argues against its relevance and applicability to Mr. DeNardo.  The Court disagrees.

Much of NVR's motion tries to relitigate issues raised at summary judgment. *Berkley Assurance Co. v. Colony Ins. Co.*, No. 17-5433, 2019 WL 9096411, at *1 (E.D. Pa. May 7, 2019) (denying motions in limine that "are largely an attempt to relitigate issues . . . resolved at summary judgment").  The Court's summary judgment order (ECF 539) was clear: the statute of repose is a non-waivable defense.  The Court's prior findings on the statute of repose remain in effect—that is, (1) the relevant injury is the landslide at the sidehill embankment (and damages flowing from that landslide), (2) the completion of Phase 1 occurred not later than April 2006, and (3) subsequent remedial measures and repairs do not toll the statute of repose.[1]

The Court also declines to exercise its discretion to preclude Mr. DeNardo from raising the defense based on judicial estoppel.  *See In re Kane*, 628 F.3d 631, 638 (3d Cir. 2010) ("Judicial estoppel is a fact-specific, equitable doctrine, applied at courts' discretion" and only to "avoid a miscarriage of justice.").

"Three requirements must be met before a district court may properly apply judicial estoppel.  First, the party to be estopped must have taken two positions that

---

[1] To be sure, the Court denied Defendants' motion to amend *nunc pro tunc* their summary judgment briefs and for reconsideration (ECF 545) because the Court was not going to re-open summary judgment, and the motion was otherwise threadbare. While certainly inefficient, nothing prevents Mr. DeNardo from making a record and raising the statute of repose at trial, including through a Rule 50 motion for judgment as a matter of law.  *See Fleck v. KDI Sylvan Pools, Inc.*, 981 F.2d 107, 116 (3d Cir. 1992) (upholding directed verdict for defendant who raised statute of repose defense at trial).

are irreconcilably inconsistent.  Second, judicial estoppel is unwarranted unless the party changed his or her position in bad faith—*i.e.*, with intent to play fast and loose with the court.  Finally, a district court may not employ judicial estoppel unless it is tailored to address the harm identified and no lesser sanction would adequately remedy the damage done by the litigant's misconduct."  *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 779-80 (3d Cir. 2001) (cleaned up).

NVR argues that Mr. DeNardo tacitly acknowledged that the statute of repose doesn't apply when he recently filed a complaint in state court seeking damages from the landslide.  ECF 563, pp.6-7.  But it would be a stretch to conclude that this fact alone requires judicial estoppel because: (1) JND, not Mr. DeNardo, is the party in state court; (2) allegations in a complaint aren't typically the type of representations to a court that receive judicial-estoppel effect; and (3) it isn't entirely clear whether the positions taken by JND in the state-court claim conflict with its position here—after all, the statute of repose applies on a contractor-by-contractor basis.  These considerations counsel against applying judicial estoppel, so the Court declines to do so here.  *See Bulger*, 243 F.3d at 786 (Judicial estoppel's "***only*** legitimate purpose is to remedy an affront to the court's integrity." (emphasis in original) (citation omitted)).

### B.  Plaintiff's motion in limine to preclude evidence and argument on NVR's alleged defects in home construction and lot excavation (ECF 564).

The motion is **GRANTED IN PART AND DENIED IN PART**.  NVR argues that Mr. DeNardo cannot point to NVR's purported negligent conduct without expert evidence.  The Court agrees, in part.

NVR is concerned that Mr. DeNardo will identify defects in how NVR built its homes (foundation construction, alteration of the grading by NVR, etc.).  That sort of evidence would appear to require some type of expert opinion.  So to the extent that

Mr. DeNardo might seek to introduce that evidence, he is precluded from doing so, due to lack of any expert opinion on the issue.

But it doesn't appear that Mr. DeNardo is necessarily attempting to make such an argument. Rather, Mr. DeNardo argues that if NVR will present evidence on how he failed to monitor some of PS&R's work regarding the grading of the lots at issue, then he should be able to show NVR's failure to do the same thing. This sort of evidence is relevant and not unduly prejudicial, as it goes to the reasonableness of Mr. DeNardo's conduct. And it isn't the sort of evidence that requires expert discovery. Therefore, Mr. DeNardo may introduce this limited evidence without an expert opinion.

## C.   Plaintiff's motion in limine to preclude evidence and argument assigning blame to dismissed parties (ECF 566).

The motion is **GRANTED IN PART AND DENIED IN PART**. NVR seeks to prevent Mr. DeNardo from introducing evidence of liability for defendants that were previously dismissed from this case. The Court disagrees, at least when it comes to the counts of negligence—and as explained below, the verdict slip should reflect the apportionment of liability on those counts.[2]

At the summary-judgment stage, both NVR and Mr. DeNardo conceded to the dismissal of certain third-party defendants (specifically, Strnisha, Morris Knowles,

---

[2] NVR also has a breach-of-contract claim against Mr. DeNardo. The Court will not include PS&R and Alton on the verdict slip as to that claim, as the Court can find no case (in Pennsylvania or otherwise) for the proposition that liability for breach of a third-party beneficiary contract must be apportioned among the parties. Indeed, this would be contrary to basic principles of contract law because Mr. DeNardo can only be held liable for breach of contract if he, in fact, breached a contract. *See* Restatement (Second) of Contracts § 235 ("When performance of a duty under a contract is due[,] any non-performance is a breach."); *see also Sullivan v. United States*, 625 F.3d 1378, 1381 (Fed. Cir. 2010) ("[E]ven if the Sullivans were third party beneficiaries, there is no cause of action against the Government because the Government did not breach." (citing Restatement (Second) of Contracts § 235)). Thus, for that claim, the jury must find whether the contract existed; if it did, whether Mr.

Gateway, the HOA, Mark Brashear, and Shari DeNardo) because neither continued to argue, either in briefing or at oral argument, that those parties were liable in any way for damages caused by the June 2018 landslide. ECF 539, pp. 5-6. The law of the case therefore precludes a finding of contributory negligence to those dismissed parties.

But the Court did not conclude, and neither party suggested, that Alton and PS&R were also not liable. Rather, the Court ruled that any claim against those Defendants had expired under the statute of repose. Mr. DeNardo similarly has not argued against those parties' liability. Indeed, the issue of whether a subcontractor, general contractor, or Mr. DeNardo himself was at fault is at the heart of this case and should not be excluded.

NVR's reliance on the Fair Share Act is misplaced. That law merely states that upon a defendant's request, the jury must apportion liability for "certain nonparties," namely those that have "entered into a release with the plaintiff with respect to the action and who is not a party[.]" 42 Pa. C.S.A. § 7102(a.2). It does not say that a jury can only apportion liability for settled nonparties. Nothing in the text precludes Mr. DeNardo from introducing evidence about Alton and PS&R's (and, for that matter, NVR's) negligence if it exists. *Raymond v. Sch. Dist. of City of Scranton*, 142 A.2d 749, 752 (Pa. Super. Ct. 1958) ("the legislature is presumed to mean what it says*"); see also Dodd v. United States*, 545 U.S. 353, 357 (2005) (same). To the contrary, defendants that are dismissed on legal grounds may nonetheless appear on verdict slips to apportion liability, though no judgment may be entered against them, if the evidence at trial would be legally sufficient to support liability. *Adams v. Rising Sun Med. Ctr.*, 257 A.3d 26, 43 (Pa. Super. Ct. 2020) ("Upon remand, the trial court shall dismiss Dr. Alexander from the lawsuit in accordance with the bankruptcy

---

DeNardo breached the contract, and; if he did, the amount of damages for which he is liable.

court's order.  However, in accordance with the Act, if the evidence at the new trial would be legally sufficient to support liability against Dr. Alexander, his name may appear on the verdict slip for purposes of apportioning negligence only.").

Finally, the Court is not persuaded by NVR's argument about general contractor liability.  While the "general contractor of a job is ultimately responsible for all subcontractors," that does not mean the subcontractor is never liable or negligent.  *Thomas H. Ross, Inc. v. Seigfried*, 592 A.2d 1353, 1358 (Pa. Super. Ct. 1991) (subcontractor award reduced because of contributory negligence).  Whether Mr. DeNardo retained control of the subcontractors is ultimately a fact question that the parties may present to the jury.  Evidence of the same is therefore admissible and not unfairly prejudicial.  FRE 403.

In sum, the parties are precluded from presenting evidence of negligence attributable to Strnisha, Morris Knowles, Gateway, the HOA, Mark Brashear, and Shari DeNardo,[3] but the parties may present evidence of negligence as to PS&R and Alton.  If the evidence at trial is legally sufficient to support liability against PS&R and Alton, those entities may be listed on the verdict slip for apportioning liability as to the negligence claims.

## II.   DEFENDANT'S MOTIONS

### A.   Defendant's motion in limine to preclude evidence of Majestic Hills, JND, and Mr. DeNardo's finances (ECF 568), and to preclude evidence to support veil-piercing and participation theories (ECF 576).

The motions are **DENIED**.  Mr. DeNardo argues that any evidence of the derivative liability of Mr. DeNardo's companies, including evidence of those

---

[3] The Court acknowledges that it may be necessary for the parties to introduce evidence about what these entities generally did as part of Phase I, and that they may need to introduce documents and invoices from or to these entities for other purposes.  Nothing in this order precludes that.

companies' finances, must be precluded because NVR is only proceeding at this stage against Mr. DeNardo himself.  The Court disagrees.

NVR has pled from the outset that Majestic Hills, JND, and Mr. DeNardo are alter egos of each other.  *See* ECF 183, ¶ 13.  NVR has proffered a basis to support its theory on veil-piercing.  *See* ECF 585, pp. 2-4; ECF 588, pp. 2-3.  This makes Defendants' finances and any commingling of finances relevant, and not otherwise unduly prejudicial.  *See NewSpring Mezzanine Cap. II, L.P. v. Hayes*, No. 14-1706, 2016 WL 7426122, at *3 n.2 (E.D. Pa. Dec. 23, 2016) ("Whether NewSpring can pierce the veil is a factual inquiry that must be determined by the jury, and it has pointed to evidence to support such a theory."); *Cantiere DiPortovenere Piesse S.p.A. v. Kerwin*, 739 F. Supp. 231, 238 (E.D. Pa. 1990) (upholding jury's verdict finding corporate principals liable on theory of veil-piercing where evidence supported disregard for the corporate form).

Mr. DeNardo also seeks to prevent NVR from pursuing a participation theory of liability against him.  Under this theory, a plaintiff may hold an officer of a corporation liable as an individual actor, rather than as an owner, who "personally participated in the alleged tortious acts committed on behalf of the corporation[ ]." *Wicks v. Milzoco Builders, Inc.*, 470 A.2d 86, 90 (Pa. 1983).[4]  "To impose liability under the participation theory, a plaintiff must establish the individual engaged in misfeasance," rather than nonfeasance.  *Com. ex rel. Corbett v. Snyder*, 977 A.2d 28, 46 (Pa. Commw. Ct. 2009).  That a home developer had knowledge that a location for a home development created an unreasonable risk of drainage problems, but still ordered building to proceed, can satisfy misfeasance under a participation theory of liability.  *Wicks*, 470 A.2d at 90 (allowing participation theory where "the pertinent averments . . . can be read as setting forth, generally, that the individual appellees

---

[4] Because the theory imposes liability for the defendant's actions, it is not based on a finding that the corporation is a sham.  *Wicks*, 470 A.2d at 90.

actually knew that the location of the proposed Monroe Acres Development created, at least, an unreasonable risk of the drainage problems which occurred and that, having the power to do so, they deliberately ordered the work to proceed.").

NVR has long alleged that Mr. DeNardo told PS&R that it was too expensive for PS&R to monitor earthwork at all times (ECF 183, ¶ 57) and instructed it to only be present at the end of major excavations (ECF 183, ¶ 58). That is a similar situation to the one in *Wicks*, so NVR may present argument and evidence to try to prove Mr. DeNardo's malfeasance and to convince the jury to hold Mr. DeNardo liable under a participation theory.

**B.    Defendant's motion in limine to exclude evidence of subsequent remedial measures (ECF 570).**

The motion is **GRANTED IN PART AND DENIED IN PART**. Mr. DeNardo moves under Rules 402, 403, and 407 to exclude "DEP Letters sent in 2022 and 2023, an October 15, 2021, Consent Order, inspection reports ranging from 2011 through 2022, correspondences and documents relevant to Phases 2 through 6, hearing transcripts irrelevant to this action from 2023, and documents and photographs unrelated to Lots 37, 38, and 39." The Court rules as follows:

First, evidence pertaining to the DEP's Clean Streams Law permit, notice of violation, consent order, contempt of the consent order, and related DEP correspondence is excluded under Rule 403. The permit and subsequent violation concerned regulatory violations by Mr. DeNardo, JND, and Majestic Hills. While some of these documents have some relevance to the cause of the landslide or the alter ego of the parties, the Court finds any limited relevance is substantially outweighed by undue prejudice and risk of confusing the jury. This case is not about Defendants' violations of environmental regulatory requirements, but this evidence will suggest otherwise to the jury. And as statements of a governmental agency, the evidence will wrongly and forcefully suggest that a regulatory violation is the same

as a negligent act.  The Court also doesn't find that a limiting instruction could cure this potential prejudice and confusion.  Thus, this evidence is excluded.  FRE 403.

Second, evidence about other phases of the development or lots other than Lots 36-39 is excluded as irrelevant under Rule 401, and as risking juror confusion under Rule 403.  The issues in this case concern the Phase 1 earthwork done on the hillside next to Lots 37, 38, and 39.  Evidence of work or repairs done at other parts of the development or in other phases is irrelevant.

Third, evidence of repair work performed on the sidehill embankment before the June 2018 landslide is admissible.  That evidence is relevant, as it goes both to the cause of the landslide and knowledge about potential defects in the sidehill's construction.  It is also not barred by Rule 407 as a subsequent remedial measure— the remediation at issue would pertain to the June 2018 landslide, so evidence of work performed on the area *before* then is by definition not a "subsequent" remedial measure.  FRE 407 (referring to measures taken "that would have made an **earlier injury or harm** less likely to occur" (emphasis added)).  Additionally, the probative value of this evidence is not substantially outweighed by the risk of prejudice or confusing the jury.  FRE 403.

Fourth, there are some exhibits that concern discussions about possible repairs to be done after June 2018.  To the extent that those documents evidence discussions with third parties about possible repairs to the sidehill embankment, they are relevant and not unduly prejudicial.  *See* Exs. 150, 152, 155, 228, 246, 248, 257.  Further, Rule 407 "does not apply to evidence of subsequent remedial measures taken by a non-party." *Diehl v. Blaw-Knox*, 360 F.3d 426, 430 (3d Cir. 2004).  So evidence of work performed by a nonparty on the sidehill embankment after June 2018 is not precluded by the Rule. *Cf. Valdez v. City of Phila.*, No. 12-7168, 2016 WL 2646667, at *4 n.2 (E.D. Pa. May 10, 2016) ("The examples given have a critical commonality— they involve an actual improvement to the alleged deficiency.  Here, there was no

change made, only an external audit by a third party recognizing that change is warranted, which Defendant is free to adopt or not.").

**C.    Defendant's motion in limine to exclude evidence of NVR's attorneys' fees (ECF 572).**

The motion is **DENIED.**  Mr. DeNardo argues that evidence related to NVR's attorneys' fees incurred in connection with litigation at the Majestic Hills development (in this case and in other actions) should be excluded under Rules 402 and 403.  The Court disagrees, with some qualification.

NVR's attorneys' fees incurred in connection with other related litigation are recoverable as "actual loss" under its negligent-misrepresentation claim.  The Restatement (Second) of Torts § 552B states that damages for negligent misrepresentation include "pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance upon the misrepresentation."  *See, e.g., In re Brownsville Prop. Corp., Inc.*, No. 10-21959, 2013 WL 4010308, at *27 (Bankr. W.D. Pa. Aug. 1, 2013). The Pennsylvania Supreme Court has not expressly adopted section 552B, but the Third Circuit predicted that it would if confronted with the question.  *Brand Mktg. Grp. LLC v. Intertek Testing Servs., N.A., Inc.*, 801 F.3d 347, 356 (3d Cir. 2015).  To that end, at least one Pennsylvania federal court has held that "to the extent that the plaintiff incurs increased litigation fees and expenses in separate litigation as a result of the defendants' alleged misrepresentations, such increased costs may be recoverable damages." *Bobin v. Sammarco*, No. 94-5115, 1995 WL 303632, at *3 (E.D. Pa. May 18, 1995).

Accordingly, the Court concludes that NVR's defense of lawsuits because of its reliance on a negligent misrepresentation is actual loss that may be recoverable.  If

NVR presents evidence of that actual loss, as relating to the relevant injury in this case, it is admissible.  FRE 401, 403.

Additionally, NVR argues that it should be permitted to prove that an implied-in-fact contract between it and Mr. DeNardo provided for recovery of attorneys' fees. ECF 583, p. 4.  The Court declines to preclude that theory at this point, and will allow NVR to develop this evidence at trial.  If NVR can establish that indemnification for attorneys' fees was a term of the implied-in-fact contract, then it can introduce evidence of attorneys' fees in connection with this claim, as well.  *See AmeriPro Search, Inc. v. Fleming Steel Co.*, 787 A.2d 988, 991 (Pa. Super. Ct. 2001) (finding no implied-in-fact contract where no intent on fee arrangement could be discerned from parties' conduct); *Weiss v. Thomas Jefferson Univ.*, No. 3103 EDA 2017, 2019 WL 2501483, at *8 (Pa. Super. Ct. June 17, 2019) ("Just because one party agrees to one of the terms does not mean the parties have entered into an implied in-fact contract regarding all other terms[.]").

### D. Defendant's motion in limine to exclude evidence of damages incurred by homeowners (ECF 574).

The motion is **GRANTED IN PART AND DENIED IN PART**.  Mr. DeNardo seeks to preclude evidence related to damages incurred by the homeowners.  The Court denies that motion, in part, because at least some of that evidence is relevant to NVR's claims.

As explained, the issues in this case concern work performed at lots affected by the landslide at the sidehill embankment.  So what is relevant is the work done on lots at, and damages flowing from, any of the landslides on that embankment; as pled in the first amended complaint and supported by NVR's expert opinion, that would include Lots 36, 37, 38, and 39.  Photographic evidence of those lots is relevant; and

the monies paid by NVR to re-locate those homeowners is also relevant as a form of requested damages in this case.

NVR's claims about any other lots at Majestic Hills have been abandoned at this point. The Court found in its opinion on summary judgment that NVR had abandoned any claims for recovery of damages involving Lot 102. ECF 539, p. 8 n.5. And NVR's complaint does not allege that Majestic Hills, JND, or Mr. DeNardo breached a contractual or tortious duty for work performed at Lots 529, 530, and 618 (the latter of which does not even appear in the complaint). Thus, evidence pertaining to those lots or any other lots besides Lots 36-39 is irrelevant and inadmissible.

**E.    Defendant's motion in limine to exclude evidence about lots other than lots 37-39, and work performed after Phase 1 earthwork (ECF 578).**

The motion is **GRANTED IN PART**, with clarification. As discussed in the context of resolving the other motions, evidence of other phases of the work and other problems with other lots in the development is irrelevant and will be excluded. Since the landslide occurred behind Lots 37, 38, and 39, the only relevant evidence concerns work done on and associated damages with those lots. Also, the first amended complaint pleads residual damage to Lot 36, and that is also supported by NVR's expert opinion. Therefore, the evidence can extend to the work done on Lot 36, as well as Lots 37-39.

**F.    Defendant's motion in limine to preclude evidence of liability of Majestic Hills and JND (ECF 580).**

The motion is **DENIED**. Mr. DeNardo seeks to limit evidence about Majestic Hills LLC and JND, as a function of the automatic stays imposed in those bankruptcy

proceedings.  But Mr. DeNardo overstates the effect of this trial on the bankrupt parties.

With respect to JND, NVR has taken the position that res judicata and collateral estoppel do not apply, and so will be estopped from arguing otherwise in any subsequent proceeding.  *See* ECF 587, p. 5 ("[B]ecause a stay has been entered as to all claims against JND, JND is not a party.  It thus will not participate in the trial and will not be on the verdict slip, nor will the jury be required to make an express finding as to JND liability to impose liability on Mr. DeNardo.  JND thus will not be bound by any further holdings of this Court or the jury's verdict.").[5]

With respect to Majestic Hills, NVR, in opposition to the motion in limine, advised this Court that the bankruptcy stay was lifted in February 2023.  Therefore, for purposes of the motion in limine, the impact of the bankruptcy stay on Majestic Hills is now a non-issue.

<center>**********************</center>

Dated: July 21, 2023

<div style="margin-left:40%">

BY THE COURT:


/s/ J. Nicholas Ranjan
J. Nicholas Ranjan
United States District Judge

</div>

---

[5] Even if these preclusion doctrines could apply, recall that Mr. DeNardo opposed NVR's request to stay this trial due to the JND bankruptcy filing.  ECF 551, pp. 5-6.  Mr. DeNardo cannot take the position that the trial must proceed, while trying to tie NVR's hands as to the evidence it might present that could also implicate JND.  *Accord In re MCSi, Inc.*, 371 B.R. 270, 275 (S.D. Ohio 2004) (declining to stay case based on collateral estoppel effect when the bankrupt defendant did not seek the stay).